Donald F. BUXTON,
Plaintiff-Appellant,

v.

CITY OF PLANT CITY, FLORIDA, Troy
E. Surrency, Individually, Troy E. Sur-
rency, in his official capacity, Defen-
dants-Appellees.

No. 88-3298.

United States Court of Appeals,
Eleventh Circuit.

May 1, 1989.
As Amended June 13, 1989.

Alice K. Nelson, Gainesville, Fla., for
plaintiff-appellant.

John W. Robinson, IV, Fowler, White,
Gillen, Boggs, Villareal & Banker, Lynn M.
Gilleland, Tampa, Fla., for defendants-ap-
pellees.

Before RONEY, Chief Judge,
HATCHETT, Circuit Judge, and
HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In reversing this public employee termination case, we distinguish *Thomason v. McDaniel*, 793 F.2d 1247 (11th Cir.1986) and hold that the placing of stigmatizing information in a public employee's personnel file or in an internal affairs report (public records of Florida pursuant to state law) constitutes publication sufficient to implicate liberty interests requiring protection through procedural due process of law proceedings.

## FACTS

On February 14, 1981, Plant City, Florida, hired Donald F. Buxton as a police officer. In June, 1982, the Plant City Police Department investigated Buxton for allegedly assaulting Olin English during the course of an arrest. Plant City's Police Chief, Troy W. Surrency, assigned Officer William Hysell to conduct an internal affairs investigation. Officer Hysell interviewed Buxton. Officer Hysell also interviewed the witnesses to the arrest. Officer Hysell concluded that Buxton had physically abused English prior to placing him under arrest.

On June 22, 1982, Buxton met with Chief Surrency, Lieutenant Ruffin Cain, and Officer Hysell in Chief Surrency's office. Chief Surrency advised Buxton that he was being suspended with pay because of the Olin English incident and that he would be contacted again at the end of the week. On June 25, 1982, Buxton again met with Chief Surrency, Lt. Cain, and Officer Hysell. Chief Surrency terminated Buxton for violation of departmental policies which he listed in detail, effective June 26, 1982. The meeting lasted between five and ten minutes.

Section 4.03 of Plant City's Personnel Rules sets forth a grievance procedure available to all city employees. Buxton did not request a hearing on his termination; he contends that he was not aware that he was entitled to such a hearing or that the grievance procedure existed.

Chief Surrency sent a Notice of Termination to the Florida Criminal Justice Standards and Training Commission (FCJSTC), in compliance with Fla.Stat. § 943.23 (1982), indicating that Buxton had been terminated on June 25, 1982.[1] On March 1, 1983, the Division of Standards and Training filed an administrative complaint with the FCJSTC seeking to suspend or revoke Buxton's certification as a law enforcement officer. On October 9, 1984, the FCJSTC entered a final order dismissing the case due to unavailability of witnesses.

After dismissal of the case, Buxton applied for a position with the Winter Haven, Florida, Police Department. The Winter Haven Police Department requested a reference from Chief Surrency regarding Buxton. Prior to giving the personnel file to the Winter Haven Police Department, Chief Surrency demanded a release from Buxton.[2] Buxton signed a release for the Win-

1. Fla.Stat. § 943.23 (1982), repealed by Laws 1984, c. 84–258 § 25, eff. Oct. 1, 1984, required an employing law enforcement agency to give notice of employment, termination, inactive status and reinstatement.

2. The release was not necessary to obtain Buxton's personnel files. Fla.Stat. § 112.533 (1987) (substantively the same as Fla.Stat. § 112.533 (1983), in effect at the time of Buxton's signed release), provides, in pertinent part:

> 112.533. Receipt and process of complaints
> (1) Every agency employing law enforcement officers or correctional officers shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such employing agency from any person.
> (2) Notwithstanding s. 119.14 [Open Government Sunset Review Act]:
> (a) A complaint filed against a law enforcement officer, ... with a law enforcement agency ... and all information obtained pursuant to the investigation by the agency of such complaint shall be confidential until the conclusion of the internal investigation or at such time that the investigation ceases to be active without a finding relating to probable cause. If the internal investigation is concluded with the finding that there is no probable cause to proceed with disciplinary action or file charges against the officer, a statement

ter Haven Police Department dated February 10, 1986.[3] The Winter Haven Police Department presented this release to Chief Surrency, and he provided copies of Buxton's files, including the internal affairs report.

## PROCEDURAL HISTORY

On June 13, 1986, Buxton filed this lawsuit in the United States District Court for the Middle District of Florida seeking injunctive relief and damages. The complaint contained three counts and named as defendants the City of Plant City, Florida, Chief Surrency, and Netty Draughton, the city manager. Count I, a 42 U.S.C. § 1983 action, asserted violations of Buxton's property and liberty interests as guaranteed by the due process clause of the fourteenth amendment. Count II alleged a pendent state claim based on violations of Florida's Policeman's Bill of Rights, Fla. Stat. § 112.532 (1982). Count III alleged a pendent state claim of defamation.

On August 4, 1986, Plant City, Chief Surrency, and Draughton filed a motion to dismiss. The district court denied the motion on Counts I and II and granted it on

Count III of the complaint. Later, the district court dismissed Netty Draughton as a defendant. On May 19, 1987, the district court dismissed Buxton's property interest claim under Count I.

On June 2, 1987, Plant City and Chief Surrency filed a motion for summary judgment. The district court granted summary judgment as to Count I of the complaint, Buxton's liberty interest claim, dismissed the remaining count, violation of the Florida policeman's bill of rights, Fla.Stat. § 112.532 (1982), and entered judgment. On January 12, 1988, the district court entered an order reopening the case to consider Buxton's claims under the Florida Policeman's Bill of Rights. On March 22, 1988, the district court dismissed the claim.

## CONTENTIONS

Buxton contends that the presence of stigmatizing information in a public employee's personnel file in Florida is sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution. Buxton argues that a Florida public employee's liberty interest is vio-

to that effect signed by the agency head or his designee and the responsible investigating official shall be attached to the complaint; and the complaint and all such information shall be opened thereafter to inspection pursuant to chapter 119. If the internal investigation is concluded with the finding that there is probable cause to proceed with disciplinary action or file charges, the complaint and all such information shall be open thereafter to inspection pursuant to chapter 119. If the investigation ceases to be active without a finding relating to probable cause, the complaint and all such information shall be opened thereafter to inspection pursuant to chapter 119.

Fla.Stat. § 119.01 (1987) (substantively the same as Fla.Stat. § 119.01 (1983), in effect at the time of Buxton's signed release) provides, in pertinent part:

119.01. General state policy on public records

(1) It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.

Fla.Stat. § 119.07 (1987) (substantively the same as Fla.Stat. § 119.07 (1985), in effect at the time of Buxton's signed release) provides, in pertinent part:

119.07. Inspection and examination of records; exceptions

(1)(a) Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee.

**3.** The release stated:

I, the undersigned applicant, do hereby authorize the enclosed addressee to release any and all requested information, to include but not limited to, credit ratings, medical and mental records, records of present and former employers, whether recorded or unrecorded, to the Winter Haven Police Department. I hereby agree and promise to indemnify and save harmless the addressee, its officers, agents, servants, or employees from and against any and all liability, claims, demands, damages, expenses and costs of actions, including attorney's fees, of any kind and nature arising or growing out of or in any way connected with the disclosure of the requested information. I have read and understand the above.

lated when his employer places false and stigmatizing material in the public records without procedural due process. He asserts that the signing of a release does not relieve the public employer of its duty to provide due process of law. Buxton also argues that Florida's requirement that terminations be reported to the FCJSTC does not relieve Plant City and Chief Surrency of liability. Buxton further contends that Chief Surrency is not entitled to qualified immunity.

Plant City and Chief Surrency contend that they have not deprived Buxton of his liberty interest without procedural due process because they did not publish any false and stigmatizing information. They argue that allowing access to public records in accordance with state law, allowing access to records upon receipt of a release, and providing a termination notice to the FCJSTC, do not satisfy the publication requirement for a liberty interest deprivation. They also contend that the alleged publication, if any, did not attend Buxton's termination, but occurred three and one-half years after his termination. Chief Surrency contends that he is entitled to qualified immunity.

## ISSUES

The parties present the following issues:

(1) whether the presence of stigmatizing information in a public employee's personnel file is sufficient publication to implicate the liberty interest under the due process clause;

(2) whether allowing access to public records under state law and pursuant to a release signed by the subject of the records satisfies the publication requirement for a liberty interest deprivation;

(3) whether allowing access to public records of an employee more than three years after his termination satisfies the requirement that publication of false, stigmatizing charges must attend an employee's termination for a liberty interest deprivation;

(4) whether providing a terminated employee with an opportunity to present a statement of the facts leading to his termination and including that statement in the report on his termination satisfies the due process requirement after a liberty interest deprivation;

(5) whether providing a grievance procedure, which a terminated employee chooses not to utilize, satisfies the due process requirement after a liberty interest deprivation; and

(6) whether releasing an employee's public records, pursuant to a signed release, constitutes an action for which a public official is entitled to qualified immunity.

## DISCUSSION

### I. Standard of Review

■ The district court granted Plant City's and Chief Surrency's motion for summary judgment on Count I of Buxton's complaint, which alleged a liberty interest violation. We review the district court's decision to determine whether the district court erred as a matter of law in granting Plant City and Chief Surrency summary judgment. Fed.R.Civ.P. 56(c); *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.,* 755 F.2d 1453 (11th Cir. 1985). Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1368 (11th Cir.1982). In reviewing a grant of summary judgment, we apply the same legal standards as those that control the district court in determining whether summary judgment is appropriate. *Mays v. United States,* 763 F.2d 1295, 1296 (11th Cir.), *cert. denied,* 474 U.S. 998, 106 S.Ct. 416, 88 L.Ed.2d 365 (1985). The party seeking summary judgment bears the exacting burden of demonstrating that no genuine dispute exists as to any material fact in the case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County, Georgia,* at 1368.

In assessing whether the movant has met this burden, we review the evidence

and all factual inferences arising from the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608; *Clemons v. Dougherty County, Georgia*, at 1368. We must accept Buxton's version of the facts because the district court granted summary judgment against him. *Bishop v. Wood*, 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976).

## II. Procedural Due Process

The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law. The requirements of procedural due process apply only to the deprivation of interest encompassed by the fourteenth amendment's protection of liberty and property. Buxton must establish that he has been deprived of an interest that could invoke procedural due process protection. *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). To determine whether due process requirements apply, we first look to the nature of the interest at stake. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

While an individual's interest in life is readily cognizable, definable, and apparent under the due process clause, the liberty and property interests, although comprehensible, are difficult to define. The liberty and property interests obtain constitutional status after they have been initially recognized and protected by state law. *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). Courts have repeatedly ruled that the procedural guarantees of the fourteenth amendment apply whenever the state seeks to remove or significantly alter that protected status. *Paul v. Davis* at 710, 96 S.Ct. at 1164. Chief Justice Rehnquist, writing for the majority in *Paul v. Davis*, provided two examples of this proposition. He explained that by issuing driver's licenses, states recognize their citizens' right to operate a vehicle on state highways. Thus, the Supreme Court held that the state could not withdraw this right without giving an individual due process. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Chief Justice Rehnquist explained that the state cannot alter the status of a parolee because of alleged parole violations, after affording the parolee the right to remain at liberty as long as the conditions of his parole were not violated, without giving the parolee certain procedural safeguards which guarantee due process. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In *Bell v. Burson*, and *Morrissey v. Brewer*, state action distinctly altered or extinguished a right or status previously recognized by state law. The Supreme Court found that these alterations, which officially removed the interest from the recognition and protection previously afforded by the state, were sufficient to invoke the procedural guarantees contained in the due process clause of the fourteenth amendment. *Paul v. Davis*, 424 U.S. at 711, 96 S.Ct. at 1165. The requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. at 569, 92 S.Ct. at 2705; *Hunter v. Parole and Probation Commission*, 674 F.2d 847, 848 (11th Cir.1982).

## III. The Liberty and Property Interests

" 'Liberty' and 'property' are broad and majestic terms. They are among the 'great constitutional concepts purposely left to gather meaning from experience. They relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.' " *Board of Regents v. Roth*, 408 U.S. at 571, 92 S.Ct. at 2705 (quoting *National Insurance Co. v. Tidewater Co.*, 337

U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)).

Liberty and property, as judicial terms of art, have not been defined. The conceptualization of liberty and property has evolved over time. Property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. *Board of Regents v. Roth,* 408 U.S. at 572, 92 S.Ct. at 2706. Due process protection from deprivations of liberty extend beyond the sort of formal constraints imposed by the criminal process. Although the Supreme Court has not defined "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. *Board of Regents v. Roth* at 572, 92 S.Ct. at 2706; *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). While the Supreme Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries which conceptualize liberty and property. *Board of Regents v. Roth,* 408 U.S. at 572, 92 S.Ct. at 2706.

4. *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977) (An employee must present a factual dispute which has significant bearing on his reputation to implicate the due process clause).

5. *See Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (Where the state attaches a badge of infamy to the citizen, due process comes into play. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential).

6. *See Owen v. City of Independence,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980) (The dismissal of a governmental employee accompanied by a charge against him that might seriously damage his standing and associations in his community would qualify as something the government is doing to him so as to trigger the due process right to a hearing during which the employee could refute the charges and publicly clear his name. Even if the accusations did not in point of fact cause the individual's discharge, the defamatory and stigmatizing charges implicate the liberty interests if they occurred in the course of the termination of employment).

## IV. The Liberty Interest

In reviewing the district court's order granting summary judgment, we find one issue dispositive: whether the presence of stigmatizing information placed in both the public employee's personnel file and the public record by a state entity, pursuant to a state statute, constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution. Fla.Stat. § 119.07 (1987) (quoted earlier) requires the custodian of a non-exempt public record to permit the inspection of that record by any member of the public requesting to do so.

 This is an issue of first impression in this circuit. The district court correctly announced this circuit's standard for determining whether the deprivation of an individual's liberty interest has occurred without due process of law. The district court required that Buxton prove: (1) a false statement[4] (2) of a stigmatizing nature[5] (3) attending a governmental employee's discharge[6] (4) made public[7] (5) by the governmental employer[8] (6) without a meaningful opportunity for employee name

7. What is "public"? *See Owen v. City of Independence,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980) (Extensive coverage in the press is public); *Codd v. Velger,* 429 U.S. at 628, 97 S.Ct. at 884 (Creation and dissemination of a false and defamatory impression about the employee is public). *Compare Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976) (Neither private oral communications nor written answers to interrogatories, made in the course of post-termination judicial proceedings are public); *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182 (11th Cir.1985) (In situations where the government does not voluntarily make charges or allegations against an employee, but the employee requests that the reasons for her nonrenewal be articulated and aired, the allegations and charges are not public); *Sims v. Fox,* 505 F.2d 857, 864 (5th Cir.1974) cert. denied 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975) (The presence of derogatory information in confidential files is not public).

8. *See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (If the state imposes a stigma or other disability on an individual which forecloses his freedom to take advantage of other employment opportunities, then the liberty interest is implicated).

clearing.[9]

The district court found that the truth of Plant City's allegations were in material dispute; the allegations were stigmatizing and likely to tarnish Buxton's "good name, reputation, honor, or integrity"; the allegations would likely foreclose Buxton's future employment opportunities; the allegations attended his discharge; and that Buxton was not given a post-stigmatization opportunity to clear his name.[10]

The basis of the district court's grant of summary judgment is that the mere availability of Buxton's internal affairs report under Fla.Stat. §§ 119.01 (1987) *et seq.*, which detailed the circumstances leading to his discharge, did not satisfy the publication (made public) requirement under the due process analysis.

Citing *Thomason v. McDaniel,* 793 F.2d 1247 (11th Cir.1986), the district court relied on our holding that a discharged part-time police officer "did not satisfy the requirement of publication because he ha[d] failed to establish that any disclosure of the reasons for the discharge, that is, the substance of the complaints, was ever made to the general public." *Thomason v. McDaniel,* at 1250.[11] The district court

found Buxton to be in a similar situation; Buxton failed to demonstrate that Plant City and Chief Surrency published the events surrounding his discharge.

The district court opined that a finding of publication in Buxton's situation was discouraged by sound public policy:

> To find publication here would mean that no matter how discrete a public employer is in avoiding publicity, a police officer who is discharged after an investigation reveals stigmatizing circumstances would be entitled to a hearing even though the officer had no right to continued employment. Ironically, the public employer would have to give a hearing to an at-will employee fired for just cause, but not to an at-will employee fired arbitrarily for no reason at all. This would be an unwarranted interference with public employer personnel decisions and a result certainly not required by the due process clause of the fourteenth amendment.

*Buxton v. City of Plant City, Florida,* Order No. 86–737–Civ–T–15C, at 5–6 (1987). Based on the finding of "no publication," the district court granted Plant City's and

---

**9.** *See Wisconsin v. Constantineau,* 400 U.S. at 437, 91 S.Ct. at 510 (When protected interests are implicated, the right to some kind of prior hearing is paramount.... [t]he right to be heard prior to being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society. *Quoting Anti–Fascist Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., Concurring)); *Codd v. Velger,* 429 U.S. at 627, 97 S.Ct. at 883 (Assuming that these elements necessary to make out a claim of stigmatization are met, the remedy mandated by the due process clause of the fourteenth amendment is "an opportunity to refute the charge"); *Board of Regents v. Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12 (The purpose of such notice and hearing is to provide the person an opportunity to clear his name).

**10.** *See Board of Regents v. Roth* at 573–74, 92 S.Ct. at 2707–08 (To be deprived not only of present government employment but of future opportunity for it certainly is no small injury); *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) (The right to work for a living in the common occupations of a community is the very essence of the personal freedom

and opportunity that it was the purpose of the fourteenth amendment to secure).

**11.** In *Thomason v. McDaniel,* William Thomason alleged that he was terminated from his part-time patrolman job with the Town of Sneads, Florida, because he arrested a county commissioner's son for driving while intoxicated. Among other constitutional violations asserted, Thomason contended that his termination constituted an unconstitutional infringement of his liberty interest because the resulting stigma to his reputation injured his standing in the community and foreclosed other law enforcement related employment opportunities. In analyzing Thomason's liberty interest in accordance with the Eleventh Circuit standard of review, the district court held that Thomason did not satisfy the requirement of publication. We affirmed, holding that the district court correctly determined that the facts did not form the proper base for a liberty interest violation. We specifically affirmed the district court's finding that "the newspaper coverage and town conversation occurred months after the termination and resulted not from Town disclosure, but from Thomason's filing of complaints with the Florida Commission on Ethics and the federal court." *Thomason v. McDaniel,* at 1250.

Chief Surrency's motion for summary judgment on Buxton's liberty interest claim.

Buxton now contends that the presence of stigmatizing material in his non-confidential personnel file and the internal affairs report of the English case, both a part of the public record, forecloses his freedom to pursue employment opportunities.[12] Citing *Kaprelian v. Texas Woman's University*, 509 F.2d 133, 139 (5th Cir.1975), Buxton suggests that we tailor the issue to "whether the governmental entity made the 'charges public in any official or intentional manner, other than in connection with the defense of [the] action?'"[13]

Buxton contends that this case should focus on whether the stigmatizing information has been disseminated in any manner by Plant City and Chief Surrency. If so, Buxton argues that his liberty interest is necessarily implicated. Buxton bases this argument on the fact that he has been foreclosed from several employment opportunities because of information in his personnel file and the internal affairs report. Although the district court relied on *Thomason v. McDaniel*, presuming that the report in *Thomason v. McDaniel* was a matter of public record, Buxton argues that nothing in that case supports this presumption. Buxton argues that *Thomason v. McDaniel* is distinguishable because the court's inquiry turned on whether proof of the foreclosure of other law enforcement opportunities existed, whereas the district court in this case found that stigmatizing information in his personnel file and internal affairs report are likely to foreclose his employment opportunities. Buxton cites *Swilley v. Alexander*, 629 F.2d 1018 (5th Cir.1980) (where an employer placed a reprimand letter with stigmatizing charges in an employee's personnel file, a public record) to argue that his liberty interest has been similarly implicated.

Plant City and Chief Surrency rebut Buxton's liberty interest contention in two arguments. First, they contend that they have not deprived Buxton of his liberty interest without due process because they have not published any false stigmatizing charges about him. In its simplest form, they argue that Buxton failed to prove any publication of the events surrounding his discharge.

Plant City and Chief Surrency argue that the internal affairs report at issue in this case is a public record under Florida Statute § 119.01 (1987). Because the internal affairs report is a public record, they were required by chapter 119 to provide a copy of the report to the Winter Haven Police Department upon request. Non-compliance with chapter 119 would have subjected them to the risk of criminal sanctions. Consequently, they lacked the intent required for publication when they made the report available. Citing *Thomason v. McDaniel*, they argue that filing a report in the public records in accord with state law does not constitute publication sufficient for a finding of a liberty interest deprivation. Likewise, allowing access to records upon receipt of a release signed by the subject of the records does not satisfy the publication requirement for a liberty deprivation. They further point out that the release specifically authorized Plant City to release any and all information requested by the Winter Haven Police Department and promised to indemnify and save harmless the city and all of its officers and employees from any legal action.

Plant City and Chief Surrency also argue that providing a termination notice to the FCJSTC does not satisfy the publication requirement for a liberty interest deprivation. Their sole activity was to provide the notice to the Commission. This activity did not constitute a deprivation of Buxton's liberty interest because the notice did not

---

**12.** The internal affairs report of the English case, while a part of the public record, is not a part of Buxton's personnel file.

**13.** Several of the cases cited deal with untenured college professors and the circumstances attending their termination. The legal principles controlling these cases also control cases involving at-will government employees. *See Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079 (A public employee whose position is terminable at the will of the employer stands on the same grounds as the untenured college professor in *Board of Regents v. Roth*).

contain any reasons for his discharge, much less false or stigmatizing information.

Plant City and Chief Surrency also contend that they have not deprived Buxton of his liberty interest without due process because the alleged publication did not attend Buxton's termination. They did not make Buxton's records available to the Winter Haven Police Department until after February 10, 1986, the date of Buxton's signature on the release, more than three and one half years after Buxton's termination.

The constitutional requirement of due process and the safeguarding of the liberty of the citizen against deprivation through the action of a state embodies the fundamental conceptions of justice which lie at the base of the civil and political institutions in the United States. *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). The Supreme Court has held liberty, as guaranteed in the due process clause of the fourteenth amendment to mean not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but also the right of the citizen to be free in the enjoyment of all his facilities; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; and to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned. *Booth v. Illinois,* 184 U.S. 425, 22 S.Ct. 425, 46 L.Ed. 623 (1902); *Williams v. Fears,* 179 U.S. 270, 21 S.Ct. 128, 45 L.Ed. 186 (1900); and *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). Additionally, liberty has been held to denote the right of the individual to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home, to bring up children, to worship God according to the dictates of one's conscience, and generally to enjoy those privileges long recognized at common law as being essential to the orderly pursuit of happiness by free people. *Board of Regents v. Roth,* 408 U.S. at 572, 92 S.Ct. at 2706; *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The Supreme Court has declared that the meaning of liberty must be broad. *Board of Regents v. Roth,* 408 U.S. at 572, 92 S.Ct. at 2706. *Bolling v. Sharpe,* 347 U.S. at 499–500, 74 S.Ct. at 694–695.

Because of the stigmatizing material in Buxton's personnel file and the internal affairs report of the English incident, both a part of the public records pursuant to Fla.Stat. §§ 119.01 and 119.07, Buxton has been foreclosed from several employment opportunities. Buxton's rights "to live and work where he will"; "to pursue any livelihood or avocation"; and "to engage in the common occupations of life" have been limited by placing his personnel file and the internal affairs report of the English incident into the public record. Buxton's personnel file and the internal affairs report of the English incident have stigmatized Buxton in the eyes of potential law enforcement employers and in the minds of citizens reviewing this public information. The personnel file and the internal affairs report became public, pursuant to Fla.Stat. § 112.433, at the conclusion of the investigation which culminated with Buxton's termination. Because the information in the file may be reviewed years after it is filed, its publication, for due process purposes, must be held to occur at the time of filing. Protection of the due process name clearing right cannot be effectively afforded any other way.[14]

We find *Thomason v. McDaniel* distinguishable. It did not address the issue before us. The Town of Sneads did not place stigmatizing information in Thomason's personnel file. Thomason based his challenge on "newspaper coverage and town conversation" resulting from his complaints filed with "the Florida Commission on Ethics and the federal court." *Thomason v. McDaniel,* at 1250. Accordingly, we reverse the judgment of the district court and hold that

---

**14.** Because tenured employees will ordinarily receive pre-termination hearings, our ruling will usually affect only probationary and at-will employees.

**1046**

the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution.

### V. What Process is Due

 "In cases where a liberty interest arising from reputational damage is implicated, the courts have followed a different procedural course. The hearings granted in such cases serve not to avert the unjustified denial of a specific benefit, but to allow the aggrieved party to 'clear his name.'" *Codd v. Velger*, 429 U.S. at 627, 97 S.Ct. at 884; *Campbell v. Pierce County, Georgia*, 741 F.2d 1342, 1345 (11th Cir. 1984). The Eleventh Circuit has declared the procedural requisites of a name clearing hearing. "Because it is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests." *Campbell v. Pierce County, Georgia*, at 1345. *See also, Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir.) *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979) (pre-termination hearing not required but post-termination hearing necessary in case involving liberty interest); *White v. Thomas*, 660 F.2d 680 (5th Cir.1981) *cert. denied* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (post-termination hearing proper remedy for employee deprived of liberty interest during termination); *In re Selcraig*, 705 F.2d 789 (5th Cir.1983) (state need only inform stigmatized employee that the opportunity to clear his name exists upon request; pre-termination hearing is not a prerequisite to publication).

The City of Plant City, Florida, has a grievance procedure that was apparently available to Buxton.[15] His failure to utilize that procedure is of no moment at this time because we speak here of what is constitutionally required when the liberty interest is implicated, not what may or may not have been available to Buxton. We hold

that a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required.

We reverse the judgment of the district court and hold that the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution.

**REVERSED AND REMANDED.**

---

15. Because we remand, we leave to the district court issues involving waiver of the post-termi-

nation hearing and the effect of the release.