359 F.3d 1105
 Claude COX, husband; Linda Cox, wife, Plaintiffs-Appellees,
Marshall Farnell; Francine M. Boxer; Spokane County, Counter-claimants-Appellants, and
John Roskelley, Counter-claimant,
v.
John ROSKELLEY, in his individual capacity, Defendant, and
Francine M. Boxer, in her individual capacity; Marshall Farnell, in his individual capacity; Spokane County, a municipal corporation, Defendants-Appellants.
 No. 00-35887.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 10, 2002 — Seattle, Washington.
 Filed February 20, 2004.
 
 Mary P. Gaston, Perkins Coie LLP, Spokane, Washington, for the defendants-appellants.
 Paul J. Burns, Spokane, Washington, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Washington; Justin L. Quackenbush, Senior Judge, Presiding. D.C. No. CV-99-00075-JLQ.
 Before: CYNTHIA HOLCOMB HALL, A. WALLACE TASHIMA, and JOHNNIE B. RAWLINSON, Circuit Judges.
 Opinion by Judge Rawlinson; Dissent by Judge Hall
 OPINION
 RAWLINSON, Circuit Judge:
 
 
 1
 The sole issue presented in this appeal is whether the district court properly denied qualified immunity to the individual Defendants/Appellants. Because the law was clearly established that publication of stigmatizing information without a name-clearing hearing violates due process, we AFFIRM.
 
 I.
 
 Background
 
 
 2
 In the summer of 1998, the Spokane County Road Department applied a seal coat to Bigelow Gulch Road. Unfortunately for the County, the mixture did not set as expected, resulting in damage to approximately eight hundred cars hit by flying rock chips and oil.
 
 
 3
 Appellee Claude Cox, the then-Safety/Loss Manager for Spokane County,[1] oversaw the investigation of the liability claims resulting from the Bigelow Gulch project. Cox reported to Marshall Farnell, the Director of Administrative Services who, in turn reported to Francine Boxer, the County Administrator.
 
 
 4
 Boxer received numerous complaints from private citizens and a local business regarding Cox's handling, processing, and payment of the Bigelow Gulch claims. Boxer was especially concerned that Specialty Auto & Truck Painting, Inc. was overcharging the County for repair work.
 
 
 5
 Boxer and County Commissioner Roskelley met with Cox, who assured them that he had the matter under control. Cox assured the County officials that his relationship with Ken Orrino, the owner of Specialty Auto, was "strictly business," and that Specialty Auto was the only company capable of handling the required repairs.[2] After receiving communications from the general public voicing the same overcharging concerns expressed by Boxer, the Board of County Commissioners requested that the Washington State Auditor's Office review the Bigelow Gulch claims.
 
 
 6
 After the Auditor's office briefed Farnell and Boxer, Farnell and Boxer notified Cox that he was being placed on administrative leave with pay pending further review of issues related to the processing of Bigelow Gulch claims.
 
 
 7
 Cathy Malzhan, of the County's Human Resources Department, conducted the Bigelow Gulch claims review. Her report identified the following four "areas of concern":
 
 
 8
 1. Commissioner Roskelley Incident — Trust
 
 
 9
 This area of concern focused on the aftermath of the earlier meeting among Commissioner Roskelley, Boxer and Cox. The review reflected that, contrary to Cox's representation, there were other providers who could perform the work Cox referred to Specialty Auto.
 
 
 10
 The review also recounted Commissioner Roskelley's comment to Cox regarding the identity of one specific individual who alerted county officials to the possibility of overcharging by Specialty Auto, and the Commissioner's positive reaction to the individual's having come forward. Despite the Commissioner's express positive reaction, Cox left his meeting with the county officials and proceeded to confront the complaining individual's supervisor by telephone.
 
 
 11
 The sum import of this matter was described as Cox's betrayal of the trust placed in him by county officials.
 
 2. Lack of Claims Management
 
 12
 This area of concern discussed the complete lack of internal controls over, or individual review of, invoices submitted for payment in conjunction with Bigelow Gulch claims. In addition, claimants were not provided copies of their invoices or estimates, and signed no documents related to the repair work.
 
 3. Alicia Johnson/John Crawford Calls
 
 13
 Alicia Johnson is a Claims Manager for the Washington Counties Risk Pool, an insurance cooperative. She criticized Cox's handling of the Bigelow Gulch claims, including specifically the practice of direct payment to the provider, rather than payment to the provider and claimant jointly. After being informed of Alicia Johnson's comments, Cox called Alicia Johnson's supervisor, John Crawford, and informed John Crawford that Cox "didn't need this kind of trouble."
 
 
 14
 The review characterized Cox's contact with John Crawford as threatening, because Alicia Johnson reportedly "backed off" after Cox's call.
 
 4. Claude Cox/Ken Orrino Association
 
 15
 This area of concern reflected back to Cox's denial of friendship with Ken Orrino, the owner of Specialty Auto. The review pointed out that Cox had called Orrino his friend when conversing with various individuals, including Boxer.
 
 
 16
 After receiving the report from Malzhan, Boxer and Farnell wrote Cox a letter entitled "Notice of Potential Disciplinary Action." This notice essentially tracked the areas of concern articulated in Malzhan's report. Approximately one month later Cox was sent another letter entitled "Supplementary Information Regarding Notice of Potential Disciplinary Action." The supplementary letter notified Cox that county officials had been made aware that Cox's wife purchased a car from Orrino. Although Cox's wife wrote a check from a joint checking account to pay for the car, Orrino's wife wrote a check to Cox's wife in the same amount, on the same date, from Specialty Auto's checking account.
 
 
 17
 The supplementary notice warned Cox that, left unexplained, these facts "could suggest a potential violation of R.W. 42.23.070[3] and/or lack of judgment." The letter gave Cox two days to respond to the additional facts. Cox's attorney responded on the same day, denying any appearance of impropriety, and explaining the transaction as an exchange of hay for the car. Through his attorney, Cox also challenged all alleged wrongdoing reflected in the earlier letter from Boxer and Farnell.
 
 
 18
 After reviewing the responses from Cox's attorney, Boxer and Farnell discharged Cox from employment with the County. The termination letter, dated December 11, 1998,[4] essentially mirrored the areas of concern set forth in the Malzhan report and the allegation set forth in the "Supplementary Information" letter sent to Cox.
 
 
 19
 The termination letter articulated two overall reasons for terminating Cox's employment: 1) failure to meet his responsibilities in conjunction with Cox's processing of claims arising from the Bigelow Gulch incident; and 2) poor managerial judgment on the part of Cox.
 
 
 20
 As examples of Cox's Bigelow Gulch failures, the termination letter cited examples of overcharging by Specialty Auto and payment to Specialty Auto for work that was never performed.
 
 
 21
 The termination letter cited four specific examples of the exercise of poor judgment on Cox's part: 1) calling the supervisor of the individual who alerted county officials to possible overcharging by Specialty Auto; 2) calling the Washington Counties Risk Pool to complain about the claims manager's criticism of the way the Bigelow Gulch claims were handled; 3) suggesting to his staff that they take their vehicles to Specialty Auto for repair when the owner was Cox's friend, and someone to whom Cox had discretion to direct County business; and 4) engaging in personal business with the owner of Specialty Auto.
 
 
 22
 A copy of the termination letter was placed into, and made a part of, Cox's personnel file. Since Cox was never afforded a pre-termination or post-termination hearing by the County, the termination letter ended Cox's employment with the County.
 
 
 23
 Subsequent to Cox's termination, a local newspaper filed a public records request for the release of Cox's termination letter. A member of the Spokane County Prosecuting Attorney's Office[5] in a communication entitled an "Opinion and Decision" informed County officials that Wash. Rev. Code § 42.17.310 mandated release of the letter from Cox's personnel file.[6]
 
 
 24
 Cox and his wife Linda filed a Complaint against Spokane County, the three County Commissioners, Boxer and Farnell. The Complaint asserted causes of action under 42 U.S.C. § 1983 for deprivation of property interest, wrongful discharge and deprivation of liberty interest in Cox's good name.
 
 
 25
 The defendants filed a motion for summary judgment, without making any qualified immunity argument. The district court granted Defendants' summary judgment motion as to Plaintiffs' property interest claims, but denied Defendants' motion as to Plaintiff's liberty interest claim.[7]
 
 
 26
 Defendants subsequently filed a motion for reconsideration asserting, among other arguments, that release of the termination letter did not constitute public dissemination. Upon reconsideration, the district court granted the motion in part, entering summary judgment in favor of the individually named county commissioners. The court denied the motion as to Defendants Boxer, Farnell and Spokane County.
 
 
 27
 The remaining defendants filed a second motion for summary judgment. The second summary judgment motion asserted, for the first time, a qualified immunity defense. Following extensive briefing and oral argument, the district court denied Defendants' second motion for summary judgment, including the qualified immunity argument made on behalf of Boxer and Farnell. We now address whether the district court erred when it denied qualified immunity to Boxer and Farnell.
 
 II.
 
 Discussion
 
 A. Standard of Review
 
 28
 We review de novo a denial of summary judgment predicated upon qualified immunity. See Hufford v. McEnaney, 249 F.3d 1142, 1148 (9th Cir.2001). Under the two-step qualified immunity inquiry, we accept the facts in the light most favorable to the Plaintiffs. Mena v. City of Simi Valley, 332 F.3d 1255, 1261 (9th Cir. 2003). Taken in that light, we must determine if the facts alleged demonstrate that the county officials' conduct violated a constitutional right. Id. If violation of a constitutional right is found, we must then determine whether or not the contours of the violated right were clearly established at the time of the violation. Id. B. The County Officials' Conduct Violated Cox's Constitutional Right to a Name-Clearing Hearing
 
 
 29
 As early as 1972, in Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court established that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the Fourteenth Amendment's due process clause. See id.
 
 
 30
 Publication of the stigmatizing information occurred, if at all, when the termination letter was placed into and maintained in Cox's personnel file. Although we have on two occasions considered this very issue, the differing facts render those cases inapposite.
 
 
 31
 In Mustafa v. Clark County School District, 157 F.3d 1169 (9th Cir.1998), we expressly declined to resolve the issue of whether placement of the discharge documents in Mustafa's personnel file constituted publication for purposes of Mustafa's liberty interest claim. Id. at 1179 n.10. However, the panel did note that "the district court's finding that the charges were not publicized may be problematical." Id. at 1179.
 
 
 32
 In Llamas v. Butte Community College District, 238 F.3d 1123, 1129 (9th Cir. 2001),[8] we similarly had no occasion to directly confront the issue we now address. In Llamas, we recognized our concern with the district court's finding in Mustafa that the "charges were not publicized... when details surrounding the charges remained in the employee's personnel file." Llamas, 238 F.3d at 1130 (citation and internal quotation marks omitted). The Llamas panel specifically distinguished Mustafa on the basis that "in Mustafa, the employer refused to remove documents relating to the discharge." Id. (citation omitted). On the other hand, the employer in Llamas, "purged Llama's personnel file" of the documents relating to the discharge. Id. Understandably, the Llamas panel saw no "need to address the current circuit split as to whether an employer can satisfy the publication prong by maintaining stigmatizing information in its personnel files," id., because the stigmatizing information was no longer being maintained in Llama's personnel file.
 
 
 33
 A critical fact separates this case from Mustafa and Llamas: in this case, the parties agreed, and argued in their briefs and during oral argument, that once the stigmatizing information was placed into Cox's personnel file, it became a public record under Washington law, mandating disclosure upon request. This factor takes Cox's case beyond the holdings of Mustafa and Llamas, and into the realm of Board of Regents v. Roth. See 408 U.S. at 573, 92 S.Ct. 2701.
 
 
 34
 Boxer and Farnell posit that the similarity of the California statute at issue in Llamas and the Washington statute at issue in this case compels a ruling similar to that in Llamas, i.e. that no publication occurred. However, this argument ignores the fact that the California statute in Llamas was never understood to mandate disclosure of documents in an employee's personnel file. The Llamas case did not address California's public records law at all. We will never know whether or not the Llamas panel would have decided the case differently if presented with evidence that California law mandated disclosure of the information once it was placed in the personnel file.[9] We do know that the Llamas panel viewed as determinative the fact that Llamas's file was purged and the "current record relating to his termination... is not derogatory." 238 F.3d at 1130. Contrary to Boxer and Farnell's argument, the fact that the documents were expunged from Llamas's personnel file made the difference between publication and nonpublication. The Llamas panel said as much, declining to "adopt the rule that maintaining stigmatizing files constitutes publication," because in Mustafa, "the employer refused to remove documents relating to the discharge[,]" whereas in Llamas "defendants purged Llamas's personnel file ..." Llamas, 238 F.3d at 1130 (citation omitted). A comparison of Llamas and Mustafa reveals that the pivotal distinction between the two cases is that in one (Mustafa) the nonpublication finding was "problematical" because the offending documents were not removed and, in the other (Llamas), the nonpublication finding was not "problematical" because the offending documents were removed. See id.
 
 
 35
 The facts of this case are more akin to the circumstances presented to the Eleventh Circuit in Buxton v. City of Plant City, 871 F.2d 1037 (11th Cir.1989). In that case, the employee, a police officer, was investigated for an alleged assault that occurred during an arrest. Id. at 1038. Similarly to this case, the employee was terminated following an investigation, with the Notice of Termination and Internal Affairs Report placed in the employee's personnel file. Id. at 1038-39. As with the Washington public records law, Florida law mandated release of the employee's personnel file upon request. Id. at 1039 n.2.
 
 
 36
 The employee filed a § 1983 action, with pendent state law claims. Id. at 1039. The district court granted summary judgment in favor of the employer on the basis that the availability of the stigmatizing documents in the personnel file did not constitute publication. Id. at 1043.
 
 
 37
 In reversing the district court's ruling, the Eleventh Circuit court held that "the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution." Id. at 1046. The court expressly ruled that the employee's personnel file became public pursuant to Florida's public records law mandating disclosure. Id. at 1045. The court noted that "[b]ecause the information in the file may be reviewed years after it is filed, its publication, for due process purposes, must be held to occur at the time of filing." Id. (emphasis added).
 
 
 38
 We are persuaded that the Buxton case properly analyzes an employee's liberty interest in remaining free from the public dissemination of stigmatizing information by his employer. Mustafa and Llamas reflect an analogous train of thought. Buxton and this case represent logical extensions of the reasoning articulated in Mustafa, as discussed in Llamas. In Mustafa, we served notice that, under the proper circumstances, placement of stigmatizing information in an employee's personnel file may constitute publication. 157 F.3d at 1179 n.10. In Llamas, rather than refuting the message Mustafa telegraphed, we distinguished Mustafa on the basis that the employer in Llamas expunged the offending material from the employee's file prior to any dissemination. Llamas, 238 F.3d at 1130. The clear implication of our rulings in Mustafa and Llamas is that, absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record.
 
 
 39
 Adoption of the Eleventh Circuit's rationale, as articulated in Buxton, is consistent with our precedent. We now hold explicitly that placement of the stigmatizing information in Cox's personnel file, in the face of a state statute mandating release upon request, constituted publication sufficient to trigger Cox's liberty interest under the Fourteenth Amendment. The lack of an opportunity for a name-clearing hearing violated his due process rights. See Roth, 408 U.S. at 573, 92 S.Ct. 2701.
 
 
 40
 C. A Reasonable Public Official Would Have Been Aware That Placing Stigmatizing Information In An Employee's Personnel File When State Law Mandates Disclosure Is Unlawful Absent a Name-Clearing Hearing
 
 
 41
 We recently ruled that our "analysis used to determine whether a plaintiff alleges a violation of a constitutional right is instructive in determining whether that right was clearly established." Mena, 332 F.3d at 1266. We "emphasize[d] that to find that the law was clearly established we need not find a prior case with identical, or even materially similar facts. Our task is to determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful." Id. (citation, internal quotation marks and alteration omitted).
 
 
 42
 The termination letter was placed in Cox's file on or about December 11, 1998. Mustafa, decided in September, 1998, gave officials "fair warning" that placement of stigmatizing charges in an employee's personnel file may constitute publication for purposes of assessing the asserted deprivation of a liberty interest. 157 F.3d at 1179. We expressly declined to resolve Mustafa's argument "that the charges have been publicly disclosed inasmuch as the Notice [of Intended Disciplinary Action] remains in his personnel file," or the district court's ruling that the "charges were never officially or otherwise intentionally made public by anyone connected with the school district." Id. at n.10 (internal quotation marks omitted). However, we served notice that the district court's finding of no publication was "problematical." Id. at 1179. We avoided ruling on the publication issue only because Mustafa was transferred, rather than terminated, resulting in no constitutionally prohibited conduct. See id.
 
 
 43
 In Vanelli v. Reynolds School District No. 7, 667 F.2d 773 (9th Cir.1982), we cited Roth and held that an employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality. "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment...." Id. at 777-78 (emphasis added). We quoted and discussed Vanelli again in Jones v. Los Angeles Community College District, 702 F.2d 203, 206-07 (9th Cir.1983). As noted above, Washington law provides that a personnel document is a public record, subject to disclosure, if it relates to the conduct of government and to the performance of governmental functions. Wash. Rev.Code § 42.17.310; Dawson v. Daly, 120 Wash.2d 782, 845 P.2d 995, 1000 (1993). And there is no doubt that the termination letter charged improper conduct and could impair Cox's reputation for honesty or morality. Accordingly, Defendants knew or should have known that there would be "some public disclosure" of the charges contained in the termination letter of a public employee embroiled in a dispute of public interest. By 1998, it was clearly established that such public disclosure meant that the procedural protections of due process applied.
 
 
 44
 In combination, Roth, Vanelli, Mustafa, Buxton, and the operation of Washington's public disclosure law preclude a viable "head-in-the-sand" defense on the part of County officials. We reiterate that, even in the absence of a Ninth Circuit case directly on point, government officials may still be fairly warned of potential constitutional deprivations. Drummond v. City of Anaheim, 343 F.3d 1052, 1060-61 (9th Cir.2003). Here, however, there is much more than Buxton; because of the public disclosure provisions of state law, our own cases such as Vanelli plainly informed Defendants of their obligations.
 
 III.
 
 Conclusion
 
 
 45
 Accepting as true Cox's assertion that the Notice of Termination in his personnel file contained stigmatizing information and, in light of Washington law mandating disclosure of all materials contained in an employee's personnel file, we hold that placement of the Notice of Termination in Cox's personnel file without a name-clearing hearing violated Cox's due process rights under the Fourteenth Amendment. We further hold that the contours of the right to a name-clearing hearing upon placement of stigmatizing material in a personnel file were clearly established, such that a reasonable official in these defendants' position would have known that his conduct was unlawful. Accordingly, we AFFIRM the district court's denial of qualified immunity to Boxer and Farnell.
 
 
 
 Notes:
 
 
 [1]
 This position is also known as Risk Manager
 
 
 [2]
 Actually, auto repairs were funneled to Specialty Auto and to Camp Chevrolet
 
 
 [3]
 Wash. Rev.Code § 42.23.070 prohibits any municipal officer from using his position to "secure special privileges"
 
 
 [4]
 This date is important because it establishes the timeframe for determining if the law related to Cox's asserted constitutional right was clearly established
 
 
 [5]
 Apparently, the Prosecuting Attorney's Office also serves as the county's legal counsel for civil matters
 
 
 [6]
 We note that the County Attorney's opinion finds support in Washington case lawSee Dawson v. Daly, 120 Wash.2d 782, 845 P.2d 995, 1000 (1993) (stating that a county prosecutor's performance evaluations are public records because "they contain information relating both to the conduct of government and to the performance of governmental ... functions").
 
 
 [7]
 Any appeal of the district court's adverse ruling on Plaintiffs' property interest claims must await resolution of the merits of Plaintiffs' actionSee 28 U.S.C. § 1291; see also Miranda B. v. Kitzhaber, 328 F.3d 1181, 1191 (9th Cir.2003).
 
 
 [8]
 We discussLlamas because the dissent and the Defendants rely so heavily upon it to support their arguments and because it is of assistance in analyzing the holding in Mustafa. However, in light of our charge to determine clearly established rights at the time of the violation, Llamas does not control our analysis.
 
 
 [9]
 We also note that the specific statute in question inLlamas provided that "[i]nformation of a derogatory nature shall not be entered into an employee's personnel records unless and until the employee is given notice and an opportunity to review and comment on that information." Cal. Educ.Code § 87031(b)(1).
 There appears to be no comparable provision in the Washington public disclosure act. Further, the California Public Records Act specifically exempts from disclosure "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." Cal. Gov't Code § 6254(c).
 
 
 HALL, Circuit Judge, dissenting:
 
 46
 The defense of qualified immunity must fail when, accepting the facts in the light most favorable to the plaintiff, a reasonable public official would have been aware that his conduct violated clearly established constitutional norms. Mena v. City of Simi Valley, 332 F.3d 1255, 1261 (9th Cir.2003). However, although "officials can still be on notice that their conduct violates established law even in novel factual circumstances," Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), courts presented with qualified immunity claims have a responsibility to "determine whether the law was clearly established at the time of the alleged constitutional violation." Mena, 332 F.3d at 1261.
 
 
 47
 Whether or not the majority's disposition with regard to the issue of characterizing "placement of stigmatizing information in an employee's personnel file ... when the governing state law classifies an employee's personnel file as a public record" is sensible, its decision to charge a reasonable public official with notice of its inclination to so decide is disquieting. A reasonable public official can not be expected to contemplate a significant shift in precedent, such as this Circuit choosing sides on an issue upon which other circuits have manifestly disagreed, and we have explicitly refrained from addressing, based on one line of dictum.
 
 
 48
 Given the context in which this appeal is presented, I am firmly convinced that the district court's denial of qualified immunity to the individual Defendants-Appellants was incorrect. I respectfully dissent.
 
 
 49
 * * * * * *
 
 
 50
 As the majority appropriately recognizes, the decision of whether to credit a qualified immunity defense is a two step inquiry. First, we determine whether the conduct of the government official violated a constitutional right of the plaintiff. Second, if a violation has occurred, we decide whether the contours of that right were clearly established at the time of the purported violation. Mena, 332 F.3d at 1261.
 
 
 51
 The majority's determination that the first element of the qualified immunity examination has been satisfied, while not compelled by our precedent, is reasonable. Although we have previously declined to "address the current circuit split as to whether an employer can satisfy the publication prong by maintaining stigmatizing information in its personnel files," Llamas v. Butte Community Coll. Dist., 238 F.3d 1123, 1130 (9th Cir.2001), the majority's decision to analogize the facts of this case to those confronted by the Eleventh Circuit in Buxton v. City of Plant City, 871 F.2d 1037 (11th Cir.1989) is not objectionable. Had we confronted precisely that issue in another context, I might very well be persuaded, along with my learned colleagues, that the Buxton case "properly analyzes an employee's liberty interest in remaining free from the public dissemination of stigmatizing information by his employer." In the context of a qualified immunity defense, however, whether we believe that a particular rule should be adopted is irrelevant. The "relevant, dispositive inquiry" is whether a particular right was clearly established at the time of an alleged violation of that right, inasmuch as "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Mena, 332 F.3d at 1261.
 
 
 52
 The language of our holdings in both Llamas and Mustafa v. Clark County Sch. Dist., 157 F.3d 1169 (9th Cir.1998) make astonishingly clear how inequitable it is to charge Defendants-Appellants with being on notice of the unconstitutionality of their actions. In Llamas, we "acknowledged that it remains an open question in this Circuit whether, in order to trigger due process protections, the stigmatizing charges must be publicized by the employer," or rather "retention of stigmatizing information in [the employee's] personnel file can constitute `disclosure.'" Llamas, 238 F.3d at 1129-30. Given our Circuit's lack of a definitive statement regarding that "open question," we averred that "[i]t is not well established, and the unlawfulness would not be apparent to a reasonable ... official, that filing derogatory material and/or expunging Llamas's employment file constituted a violation of his constitutional rights. There is no `clearly established' right implicated...." Id. at 1231. Although the publication at issue in Llamas was not precisely equivalent to the derogatory information involved in the instant case, since in Llamas the allegedly stigmatizing material had been purged from the plaintiff's file, our admonition was rather apparent. We could not identify in any previously decided cases,[1] nor would we then promulgate any "clearly established" law regarding the propriety of placing stigmatizing information in an employee's personnel file without affording that employee "timely notice and a meaningful opportunity to be heard." Id.
 
 
 53
 Moreover, our language in Mustafa, the very language upon which the majority relies for its conclusion that public officials had "`fair warning' that placement of stigmatizing charges in an employee's personnel file may constitute publication," does not support the majority's position. Although we opined in Mustafa that the district court's conclusion that the mere placement of stigmatizing information in a personnel file did not constitute publication "may [have been] problematical," we cautioned that "this Circuit has yet to decide whether, in order for due process protections to be triggered, the charges must be made public by the employer itself, nor has this Circuit decided whether the charges must be made public in an official or intentional manner." Mustafa, 157 F.3d at 1179 & n. 10 (emphasis added). We pointed out that "[o]ther circuits which have considered this and related issues have disagreed on whether dissemination by the defendant is required in all cases." Id. at 1179 n.10.[2] However, we chose not to confront the issue directly since the plaintiff in Mustafa had been transferred rather than terminated. Nonetheless, our language made it all too clear that the issue presented by this case had yet to be resolved. Nor have we definitively resolved the issue since our decisions in Mustafa and Llamas.
 
 
 54
 A reasonable public official is charged with notice of "sufficiently developed" law even though the situation the official confronts is neither "identical" nor even "materially similar" to the facts of the seminal cases of that area of law. Mena, 332 F.3d at 1266-67. However, the "clearly established" prong of the qualified immunity inquiry should not be written out of existence entirely. At some level, there must be a distinction between cases which give public officials "fair warning" of the potential wrongfulness of their conduct, and those which merely hint at a possible shift in position at some unspecified future date. Unfortunately, the majority has chosen to essentially eviscerate any such distinction. It is unfathomable that a reasonable public official should be aware of the unlawfulness of his conduct based on a three-word aside, which was expressly qualified by an accompanying footnote, cautioning that a lower court's decision concluding to the contrary "may be problematical." We should not equate "clearly established" law with rules which are arrived at through extremely intuitive and analytical parsing of the dicta of two of our own cases, and the similar fact pattern of one case from a sister circuit, which stands in direct opposition to the decisions rendered by other circuits. To do so unfairly collapses the qualified immunity inquiry beyond recognition.
 
 
 55
 For the foregoing reasons, I would reverse the district court, and grant qualified immunity to the Defendants-Appellants.
 
 
 
 Notes:
 
 
 [1]
 The majority deigns to consider the reasoning articulated inLlamas in spite of the fact that it was not decided until after the purported constitutional violation at issue here occurred. However, while Llamas does not "control [the] analysis," as the majority rightfully recognizes, its import should be starkly clear. If this court could not identify, in 2001, any "clearly established law" regarding the constitutionality of placing stigmatizing information in an employee's personnel file without affording the employee a name-clearing hearing, then it is incomprehensible to expect a "reasonable public official" to have inferred the unlawfulness of his conduct in December 1998. See McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir.1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent.").
 
 
 [2]
 The majority concludes thatBuxton was not merely fair warning of the potential unconstitutionality of placing stigmatizing information in an employee's personnel file, but was in fact a "clarion call to government officials." Alas, in adopting the rationale of the Eleventh Circuit, the majority apparently glosses over contrary decisions rendered by other circuits. As we cautioned in Mustafa, other circuits considering substantially similar issues had reached diametrically different conclusions. The Seventh Circuit, for example, requires the actual dissemination of damaging information in order to satisfy the requirement of publication, even if it is highly likely that the information will ultimately be distributed. Johnson v. Martin, 943 F.2d 15, 16-17 (7th Cir.1991) ("[T]he mere existence of damaging information in Johnson's personnel file cannot give rise to a due process challenge."). See also Ratliff v. Milwaukee, 795 F.2d 612, 617 (7th Cir.1986) ("Absent proof that ... defendants disseminated the stigmatizing information... [plaintiff] can not show that the defendants' actions impinged on her liberty interest....") (emphasis added). Similarly, the First Circuit found that the publication prong had not been satisfied where a stigmatizing memorandum had been placed in an employee's personnel file, but "was not otherwise publicized." Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 74 (1st Cir.1990).