**Joel DUCK, et al., Plaintiffs,**

v.

**Ronnie JACOBS, individually and in his official capacity as Mayor of the City of Nahunta; H. Wendell Herrin, Shirley H. Denty, Johnny Lee Thomas, and Doris A. Levins, in their official capacities as members of the City Council of the City of Nahunta; and The City of Nahunta, Georgia, Defendants.**

Civ. A. Nos. 589–165, 589–197, 589–213 and 589–214.

United States District Court, S.D. Georgia, Waycross Division.

June 20, 1990.

---

**5.** Plaintiff has moved for hearing on his application; the motion is DENIED.

Eugene Highsmith, Brunswick, Ga., for plaintiffs.

John T. Woodall, Savannah, Ga. and Delman L. Minchew, Waycross, Ga., for defendants.

## ORDER

ALAIMO, District Judge.

In the above-numbered cases, the plaintiffs, Joel Duck, Timothy Hollingsworth, Ronald Muchison and Robert Mastroianni each separately sued the City of Nahunta, Georgia, and its various officials, alleging that their terminations from employment as city police officers and police chiefs violated their rights under the United States Constitution. These cases are currently before the Court on the defendants' and the plaintiffs' cross-motions for summary judgment. Since these motions raise many common questions of law and fact, the Court has consolidated the cases for the limited purposes of this Order.[1] As set out more fully below, these motions will be granted in part and denied in part.

## FACTS [2]

### The Police Chiefs

Robert Mastroianni's employment by the City of Nahunta as the chief of police was terminated by Nahunta Mayor Ronnie Jacobs on March 7, 1988. Joel Duck succeeded Mastroianni as chief of police; but he, too, was fired by Mayor Jacobs on March 22, 1989. Ostensibly, the men were fired for poor job performance. At the time that they were terminated, however, neither Mastroianni nor Duck was notified of the reasons for his dismissal. Nor was either given any opportunity to respond prior to being fired. On May 18, 1990, well after the institution of this litigation, defendants for the first time offered to hold termination hearings for Duck and Mastroianni. To date, the plaintiffs have not responded to this offer.

Mastroianni and Duck contend that they were deprived of a property interest in continued employment without being afforded due process of law. They further contend that the defendants deprived them of a liberty interest in their reputations, by filing with the Georgia Peace Officers Standards and Training Council (hereinafter "POST") and other governmental agencies certain malicious and false information regarding the bases for their terminations.

### The Rank-and-File Police Officers

Timothy Hollingsworth and Ronald Muchison were employed as police officers with the Nahunta police department. They were fired by Mayor Jacobs, respectively, in March and October of 1988, ostensibly for misconduct in the performance of their duties. At the time of their terminations, however, neither man was given any explanation of the bases for his dismissal. As with Mastroianni and Duck, these plaintiffs were not offered a hearing on their terminations until May 1990. Hollingsworth and Muchison contend that they were deprived of a property interest in continued employment without being afforded procedural and substantive due process. Hollingsworth also contends that the defendants filed with POST certain false and malicious information regarding the bases for his termination, thus depriving him of a liberty interest in his reputation without due process of law. The complaint filed by Muchison, however, does not raise a liberty interest claim.

## DISCUSSION

### Property Interests in Employment

■ The due process clause of the Fourteenth Amendment undoubtedly has become one of our Constitution's most familiar and fundamental proscriptions on the use of governmental power. That clause provides, in pertinent part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. 14, § 1. Although written in broad and sweeping terms, it is clear from the face of the amendment that only the certain enumerated interests—life, liberty and property—

---

1. *See* Fed.R.Civ.P. 42(a), which provides as follows:

 When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.

2. Except where otherwise noted, the recited facts are not disputed by the parties.

fall within its protection. The due process clause "is not a [general] guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Rather, the terminated public employee is entitled to the protections of due process only if he is found to have a *property interest* in continued employment. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) ("Respondents' federal constitutional claim depends on their having had a property right in continued employment."); *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972) (same).

The Constitution, however, does not create or define property interests: "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....." *Roth, supra*, at 577, 92 S.Ct. at 2709. The Court must, therefore, look to state law in determining whether plaintiffs had a property interest in continued employment with the Nahunta police department.

■ Under Georgia law, a public employee has a property interest in employment when that employee can be fired only for cause. *Crowell v. City of Eastman*, 859 F.2d 875, 877 (11th Cir.1988) (citing *Brownlee v. Williams*, 233 Ga. 548, 212 S.E.2d 359 (1975)); *Barnett v. Housing Authority of the City of Atlanta*, 707 F.2d 1571, 1576 (11th Cir.1983). The public employee's right to be fired only for cause can arise from an explicit or implied contract, a state statute or a local ordinance. *Bishop, supra*, at 344, 96 S.Ct. at 2077. In the absence of a contractual or statutory "for cause" requirement, however, the employee serves "at will" and may be discharged at any time for any or no reason, with no cause of action for wrongful termination under state law. *Georgia Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442 (1978); *Runyan v. Economics Laboratory, Inc.*, 147 Ga.App. 53, 248 S.E.2d 44 (1978). Such "at will" employees have no legitimate claim of entitlement to continued employ-

ment and, thus, have no property interest protected by the due process clause. *Blanton v. Griel Memorial Psychiatric Hospital*, 758 F.2d 1540, 1542–43 (11th Cir.1985).

■ Plaintiffs have moved for summary judgment on their due process claims. They contend that the Nahunta City Personnel Ordinance gives them a protected property interest in continued employment—since it explicitly states that policemen and other city employees can be fired only for cause—and that they were deprived of this property interest without being afforded the prior hearing required by due process.

The defendants also have moved for summary judgment on this issue. They concede that the City Ordinance purports to give employees a right to be fired only for cause, but they contend that this ordinance is invalid under the Nahunta City Charter. The defendants argue that the charter vests *the Mayor* with the right to fire city employees at will and that any ordinance passed by the City Council purporting to restrict the Mayor's power in this regard is invalid as violative of the charter. The defendants cite § 2.22(b) of the City Charter in support of their position. That section provides as follows: "As the chief executive of the City of Nahunta, the mayor shall ... appoint and remove all officers, department heads, and employees of the city...." Nahunta City Charter, § 2.22(b).

The plaintiffs respond to this argument by citing § 3.51 of the charter. That section provides as follows:

**Personnel Policies.** The council shall adopt rules and regulations consistent with this charter concerning: (1) the method of employees selection and probationary periods of employment; and (2) the administration of the position classification and pay plan, methods of promotion, and application of service ratings thereto, and transfer of employees within the classification plan; (3) hours of work, vacation, sick leave, and other leaves of absence, overtime pay, and the order and manner in which layoff shall be effected; and (4) such other personnel policies as

may be necessary to provide for adequate and systematic handling of the personnel affairs of the City of Nahunta. The plaintiffs contend that the Mayor's authority to fire city employees under § 2.22(b) of the charter is limited by § 3.51 of the charter. They argue that the City Council's enactment of the personnel ordinance, with the "for cause" standard contained therein, constitutes a valid exercise of the Council's authority to formulate personnel policies under § 3.51.

This Court is mindful of the caution it must exercise in overruling a legislative enactment. Although the Nahunta City Council is perhaps not so lofty and august a body as the United States Congress, it is an elected, representative body nonetheless. The Council has determined that it possesses authority under the charter to enact policies concerning the method of terminating city employees, and this determination should not lightly be cast aside.

The Court cannot accept the interpretation of Charter § 2.22(b) pressed by the defendants. That section is clearly devoid of any mention of the Mayor's claimed power to fire city employees "at will." Although § 2.22(b) provides that the Mayor, "as chief executive," has the authority to "appoint and remove" city employees, it does not mention whether this authority can be exercised at will or whether it must be exercised for cause only. Rather, the section is merely a general outline of the duties of the city's chief executive.

By contrast, the unequivocal language of § 3.51 vests in the City Council the plenary power to formulate personnel policies. That section specifically provides the Council with authority to promulgate policies regarding employee selection, salaries, promotions, vacations, "the *manner in which layoff shall be effected*" and all "other personnel policies as may be necessary to provide for adequate and systematic handling of the personnel affairs of the City of Nahunta." This specific grant of authority controls over the general language of § 2.22. *Mayor of Savannah v. Savannah Electric and Power Co.*, 205 Ga. 429, 54 S.E.2d 260 (1949).

Of course, the Court must, if it can, construe §§ 2.22 and 3.51 as being consistent with one another. *DeKalb County v. Nall*, 178 Ga.App. 429, 343 S.E.2d 113 (1986). To do otherwise would be to ascribe an irrational scheme to the charter as a whole. Indeed, a reasonable reading of the two sections reveals their consistency. Section 3.51 provides that the City Council, as the city's legislative body, has the sole authority to *formulate* city employment policy. Section 2.22 merely complements § 3.51, by vesting in the Mayor, as chief executive, the responsibility of *executing* the personnel policies formulated by the Council.

■ The Court having determined that the City Council's enactment of the personnel ordinance is a valid exercise of its authority under § 3.51 of the charter, the effect of that ordinance on the instant controversy remains to be considered. Section 3–703(4) of the ordinance is entitled "Police Officers." This section provides that city police officers may be discharged only upon conviction by the City Council of certain enumerated offenses, after being given notice and a hearing. City Personnel Ordinance, §§ 3–703(4)(d)–(e). The defendants concede that this personnel ordinance, if valid, creates a "for cause only" standard for the termination of city police officers. Since the Court has answered the validity question in the affirmative, it follows that the ordinance provides city police officers such as Hollingsworth and Muchison with a right to be fired for cause only and a property interest in continued employment.

■ It is equally clear, however, that Duck and Mastroianni had no property interest in continued employment with the Nahunta police department. Since these men served as police chiefs rather than rank-and-file policemen, § 3–703(4) does not apply to them. Rather, the personnel ordinance has a specific provision—§ 3–703(3), entitled "Police Chief"—which delineates the rights and duties of the police chief apart from the provisions dealing with rank-and-file policemen generally. Unlike the provisions applicable to police officers,

this section makes no mention of any rights to a hearing or to be fired only for cause. Indeed, the section applicable to the police chief provides merely that the chief is "appointed by the mayor and council." This provision must be read *in pari materia* with § 3.12(c) of the City Charter, which provides that "directors of departments and other appointed officers of the city shall serve at the pleasure of the appointing authority." Since the police chief is appointed by the Mayor and the Council, he serves at their pleasure, or "at will," according to the clear language of § 3.12. Duck and Mastroianni were chiefs of police, and served at the will of the Mayor and Council according to § 3.12 of the charter. Accordingly, they had no property interest in continued employment and cannot prevail on their claims for deprivation of property interests without due process. The defendants' motions for summary judgment must be granted as to these claims.

The Court has determined, however, that Hollingsworth and Muchison had property interests in their employment pursuant to § 3–703(4) of the City Ordinance. Accordingly, those plaintiffs were entitled to the protections of due process in connection with their terminations. As to them, the question then becomes, "What process was *due* them?"

*Requirements of Due Process*

The Supreme Court has held that the due process clause requires "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill, supra,* at 542, 105 S.Ct. at 1493. *See generally Roth, supra,* at 569–70 and n. 7, 92 S.Ct. at 2705 and n. 7 ("When protected interests are implicated the right to some kind of prior hearing is paramount.... '[I]t is fundamental that except in emergency situations[,] and this is not one[,] due process requires that when a state seeks to terminate a protected interest ..., it must afford notice and opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective.'") (emphasis in original) (citations omitted). This pre-termination hearing "though necessary, need not be elaborate." *Loudermill, supra,* at 545, 105 S.Ct. at 1495.

This Court recently explored, in considerable detail, the requirements of due process in the context of employment termination. *See Burch v. Rame,* 676 F.Supp. 1218 (S.D. Ga.1988). After studying *Loudermill, Roth* and numerous other cases, this Court came to the following conclusions:

> Although due process is not wooden, it is now fully accepted that a public employee is entitled to notice and an opportunity to be heard *prior to termination.* The hearing need not be a full evidentiary hearing; rather, due process is satisfied if there is some minimal pretermination hearing followed with a more expansive post-termination procedure.

*Burch, supra,* at 1224 (emphasis in original).

 It is undisputed that Hollingsworth and Muchison received no hearing—formal or informal—*prior* to being discharged. Therefore, the Court need not assess the adequacy or timeliness of any *post*-termination procedures made available by the defendants. Hollingsworth and Muchison are entitled to summary judgment in their favor on their claims for deprivation of property interests without due process.

*Liberty Interest in Employment*

 The due process clause protects not only "property" but "liberty" as well. The Supreme Court has recognized that, in certain circumstances, an individual's good name and reputation may constitute a liberty interest protected by due process. A terminated employee's reputational liberty may be implicated if the public employer, in discharging the employee, publishes some false statement of a stigmatizing nature concerning the basis for the employee's discharge. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037 (11th Cir.1989). The discharged employee's liberty interest is implicated in this context because the false statements may hinder his ability to secure

future employment in his chosen field. *Id.* Such a claim may exist even though the employee is "at will" and has no property interest in employment. *See, e.g., Campbell v. Pierce County, Georgia,* 741 F.2d 1342, 1344 (11th Cir.1984).

■ In the cases *sub judice,* Mastroianni, Duck and Hollingsworth contend that they were deprived of liberty interests in their reputations when the defendants filed with the Georgia POST Council certain false, malicious and stigmatizing statements regarding the reasons for plaintiffs' discharges. In their motions for summary judgment, the defendants contend that plaintiffs' liberty interest claims must fail since the information sent to POST was true. Whether the information was true is, of course, a question of fact for the jury to determine upon the disputed evidence presented here; the Court cannot decide this question on a motion for summary judgment.

■ Defendants also argue that their mere action in filing the termination reports with POST does not constitute "publication" as required under federal law. This contention is disposed of by the recent decision of the Eleventh Circuit in *Buxton, supra.* In that case, a terminated Florida policeman claimed that his reputational liberty had been impaired when the public employer filed with the Florida Criminal Justice Standards and Training Council certain false and stigmatizing information regarding the reasons for his termination. The district court granted summary judgment for the defendants, reasoning that the information had not been "published." *Id.* at 1042–43. The Eleventh Circuit reversed the district court, holding that the publication requirement was satisfied since the information was on file with the Standards and Training Council and would be available for inspection by any law enforce-

ment agencies to which plaintiff might apply for employment. *Id.* at 1045–46. The same reasoning is fully applicable here. Since the allegedly false and stigmatizing information filed with POST will be made available to any law enforcement agencies to which the plaintiffs might seek employment in the future, that information has been "published" for the purposes of a due process/liberty interest claim.

■ Finally, defendants argue that the information filed with POST is protected by an absolute privilege under state law, even if it was done maliciously and in bad faith.[3] In making this argument, however, the defendants fail to recognize that plaintiffs' reputational liberty claim is grounded in the *federal* Constitution, not in the defamation law of Georgia. Under federal law, a plaintiff can recover for a deprivation of reputational liberty upon proof of the following elements:

(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing.

*Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1042–43 (11th Cir.1989) (footnotes omitted). If at trial plaintiffs prove the above six elements, they will be entitled to prevail; their federal constitutional claims are not restricted by the specific features of Georgia's state defamation law. *See Marrero v. City of Hialeah,* 625 F.2d 499, 517 n. 24 (5th Cir.1980), *cert. denied sub nom, Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (court notes that plaintiff's claim for damage to reputation would be subject to an absolute privilege under state law, but court nevertheless proceeds to discuss merits of claim under the federal Constitution); *Sparks v. City of Atlanta,* 496 F.Supp.

---

**3.** Defendants contend that they are required by law to file reports with POST whenever a police officer is fired and, therefore, that the disclosures were made "in the performance of a public duty" and are absolutely privileged under Georgia law. The Court will assume for the purposes of this discussion that Georgia law recognizes an *absolute* privilege in this situation.

There is, however, considerable indication that disclosures made in the performance of a public duty enjoy only a *qualified* privilege under Georgia law and that the privilege is lost if the defendant acts maliciously and in bad faith—as alleged herein. *See, e.g., King v. Masson,* 148 Ga.App. 229, 251 S.E.2d 107 (1978); *McKinnon v. Trivett,* 136 Ga.App. 59, 220 S.E.2d 63 (1975).

770, 772 n. 2 (N.D.Ga.1980) (same). Where, as here, the plaintiff brings a claim for violation of his rights under the federal Constitution, any question of privilege or immunity is governed by federal law. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *ovrld. on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Crowe v. Lucas,* 595 F.2d 985 (5th Cir. 1979). In cases such as this, the federal courts hold that a privilege is available to the defendant only if he acted in *good faith. Id.*[4] Therefore, it would be inconsistent with federal law for this Court to hold that the defendants enjoy an absolute privilege to violate the defendants' constitutional rights to reputational liberty. For these reasons, the defendants' motions for summary judgment must fail as to plaintiffs' reputational liberty claims.

CONCLUSION

In accordance with the foregoing, the defendants' and the plaintiffs' motions for summary judgment are hereby GRANTED IN PART and DENIED IN PART.

In enacting City Personnel Ordinance § 3–703(4), the Nahunta City Council acted within the authority granted to it under the City Charter. This personnel ordinance gives rank-and-file city police officers, such as Hollingsworth and Muchison, a property interest in continued employment for purposes of due process. Since Hollingsworth and Muchison were afforded no notice or opportunity to be heard prior to being terminated, their motions for summary judgment are GRANTED as to their claims for deprivation of property without due process of law. The Clerk is directed to enter an appropriate judgment on behalf of these plaintiffs with respect to this claim. Defendants' motions for summary judgment on these claims are DENIED.

Police chiefs Duck and Mastroianni, however, were not covered by § 3–703(4) of the personnel ordinance. Rather, these plaintiffs served at the pleasure of the Mayor and City Council under § 3.12(c) of the charter. Since Duck and Mastroianni had no property interest in continued employment as chiefs of police, the defendants' motions for summary judgment are GRANTED as to these plaintiffs' claims that they were deprived of property without due process of law. The Clerk is directed to enter an appropriate judgment on behalf of defendants with respect to this claim. Plaintiffs' motions for summary judgment in this respect are DENIED.

The sole theory of liability remaining for trial are the liberty interest claims of Mastroianni, Duck and Hollingsworth; these claims cannot be disposed of on summary judgment. The truth of the reports filed with POST is a question of fact for the jury to determine. The defendants' arguments that the reports were not published or that they were absolutely privileged under state law are without merit. Defendants' motions for summary judgment are DENIED as to these claims.

SO ORDERED.

---

**4.** This qualified privilege recognized by federal law will not warrant the grant of summary judgment for the defendants in the instant case, since the plaintiffs allege that the defendants acted maliciously and in bad faith.

The only situation in which federal law recognizes an absolute privilege is where the defendant acts as a judicial officer in violating the plaintiff's constitutional rights. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).