[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10011
Non-Argument Calendar

_____

D. C. Docket No. 07-00381-CV-AR-S

MING WEI LIU,

Plaintiff-Appellant,

versus

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA,
ROBERT C. BOURGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 19, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Dr. Ming Wei Liu ("Liu") challenges the district court's grant of summary judgment in this case.

## I.

Liu is a cardiologist who, between 1991 and 2001, was a tenured Associate Professor of Medicine at the University of Alabama Birmingham ("UAB"). In 2001, for reasons not relevant to this appeal, the director of the Division of Cardiovascular Research at UAB Dr. Robert Bourge ("Bourge") summarily suspended Liu's clinical privileges and instituted a "peer review" investigation of Liu's clinical privileges. Upon the advice of counsel, Liu submitted his resignation before the investigation was completed. As required by the Healthcare Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101, et seq., UAB reported Liu's resignation during the pendency of an investigation to the National Practitioner Data Bank ("NPDB").

After resigning from his position at UAB, Liu applied for a professorship at the University of Southern California Hospital ("USC"). As a part of his application for staff privileges, USC asked Liu to request that UAB forward certain peer review information to USC, so that it could evaluate the report on the NPDB. Instead of sending the requested peer review information, Bourge sent a "recommendation letter" to USC stating that Liu was placed on probation and was

being investigated because his "performed procedures, planned procedures, certain aspects of medical care, and his hospital chart documentation were not within the standard of care at our institution." Upon receiving this letter, USC again requested additional peer review information regarding the cases Bourge asserted were not within UAB's "standard of care." UAB invoked Alabama state medical peer review privilege, Ala. Code §§ 6-5-333 and 22-21-8 ("peer review privilege"), and refused to provide the peer review information concerning Liu to USC. Because it did not receive the requested peer review information, the USC credentialing committee denied Liu's application for staff privileges as incomplete. After being denied staff privileges at USC, Liu was eventually granted clinical privileges at several hospitals in the Los Angeles, California area, where he is currently practicing medicine.

Liu commenced this case against UAB and Bourge seeking, inter alia, a declaratory judgment and injunctive relief to require UAB to provide the peer review information concerning Liu to the credentialing committee of USC. In addition to several state law claims, Liu asserted two claims pursuant to 42 U.S.C. § 1983, alleging that UAB's invocation of the Alabama peer review privilege to refuse to provide the peer review information to USC (1) violated the Supremacy Clause of the United States Constitution by obstructing the "essential purpose" of

the HCQIA and (2) violated Liu's Fourteenth Amendment right to substantive and procedural due process and to equal protection by interfering with his right to pursue his chosen profession. Upon cross-motions for summary judgment, the district court found, <u>inter alia</u>, that (1) UAB, as an instrumentality of the state of Alabama, is immune from suit under the Eleventh Amendment; (2) Bourge's refusal to provide the peer review information requested by USC did not violate the "essential purpose" of the HCQIA; and (3) because Liu is currently practicing as a cardiologist and has not shown that UAB/Bourge's conduct has prevented him from employment as a professor of medicine with all employers, Liu has no valid due process claim. Accordingly, the district court dismissed all claims asserted against UAB and dismissed the federal claims asserted against Bourge. Then, because jurisdiction was premised upon federal question[1] and all of the federal claims had been dismissed, the district court declined to exercise jurisdiction over the state law claims and dismissed them without prejudice.

Liu appeals, challenging the dismissal of his federal claims against Bourge.[2]

---

[1] In his complaint, Liu also claimed federal jurisdiction on the basis of diversity of citizenship. The district court, however, found that Liu had not established the requisite amount in controversy and that federal jurisdiction was only proper because Liu asserted federal claims. Liu does not dispute this finding on appeal.

[2] Liu does not appeal the district court's determination that UAB is immune from suit under the Eleventh Amendment.

4

II.

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and quotation omitted).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

III.

Liu appeals the grant of summary judgment, asserting that the district court erred (1) by finding that Bourge's refusal to provide the requested peer review information did not violate the Supremacy Clause as inconsistent with the HCQIA; and (2) by finding that Liu had not established that his constitutionally protected "right to pursue his chosen profession" was violated.[3]

---

[3] Liu also argues that the district court erred in its "threshold conclusion" that the Alabama peer review privilege could be invoked to refuse to provide peer review information properly requested by a hospital in another state.  The district court, however, did not actually reach this conclusion; rather, it considered whether the peer review privilege, as it was asserted by Bourge, violated Liu's constitutional rights.  After finding that Bourge's invocation of the privilege to deny USC's request for peer review information did not violate any of Liu's federally protected rights, the district court declined to exercise its supplemental jurisdiction over the pending state law claims and therefore had no need to determine whether the state law privilege was intended to be asserted in such a manner.  See Pintando v. Miami-Dade Housing Agency, 501 F.3d 1241, 1242 -1243 (11th Cir. 2007) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims

5

Regarding Liu's first assignment of error, Liu argues that Bourge's interpretation of the Alabama peer review privilege "frustrates" Congress's intent in enacting the HCQIA and that therefore the privilege as applied is unconstitutional as violative of the Supremacy Clause. See Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 604-05 (1991). We disagree.

Congressional intent is the "ultimate touchstone" in a Supremacy Clause case, Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), and this intent "governs our determination of whether federal law preempts state law." Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1267 (11th Cir. 2000); see This That and Other Gift and Tobacco, Inc. v. Cobb County, Ga., 285 F.3d 1319, 1322 (11th Cir. 2002). Only if the application of a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" will it be deemed a violation of the Supremacy Clause and therefore preempted by the federal law. See Mortier, 501 U.S. at 604-05 (1991).

Congress enacted the HCQIA to address the rising problem of medical malpractice and the ability of incompetent doctors to move between states without having their prior practice records follow them[4] and to create a presumptive

---

over which it has original jurisdiction"). Our review therefore is limited to the district court's findings regarding the sufficiency of Liu's constitutional claims.

[4] To that end, it created the NPDB, a national registry which requires health care entities, inter alia, to report the following information upon accepting a physician's surrender of clinical

immunity from monetary damages awarded against participants in the peer review process. 42 U.S.C. §§ 11101 - 11111. The Alabama statutes at issue, Ala. Code §§ 22-21-8 and 6-5-333(d), supplement the HCQIA by providing participants in the peer review process with an explicit privilege from discovery in the civil litigation context.[5] We conclude that the intent of both the federal and state statutes, therefore, is "to facilitate the frank exchange of information among professionals conducting peer review inquiries without the fear of reprisals in <u>civil lawsuits</u>." <u>Bryan v. James E. Holmes Reg'l Med. Ctr.</u>, 33 F.3d 1318, 1322 (11th Cir. 1994) (interpreting the HCQIA); <u>accord</u> <u>Ex parte Krothapalli</u>, 762 So. 2d 836, 838 (Ala. 2000) ("In order to make meaningful peer review possible, the [Alabama state] legislature provided a guarantee of confidentiality for the peer review process . . . .") (quoting <u>Cruger v. Love</u>, 599 So. 2d 111, 113-14 (Fla. 1992)); <u>Marshall v. Planz</u>, 145 F. Supp. 2d 1258, 1265 (M.D. Ala. 2001); <u>McGee v. Bruce</u>

---

privileges while under an investigation: "the name of the physician involved; a description of the acts or omissions or other reasons for the action or, if known, for the surrender; and such other information respecting the circumstances of the action or surrender as the Secretary deems appropriate." 42 U.S.C. § 11133(a)(3). Liu does not allege that UAB's report to the NPDB failed to satisfy HCQIA's statutory disclosure requirements.

[5]"The plain language of Alabama's two statutes, §§ 6-5-333 and 22-21-8 . . . declares as privileged 'all information, interviews, reports, statements, or memoranda furnished to any committee as defined in this section' . . . and provides that 'no person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented.'" <u>Ex parte Burch</u>, 730 So. 2d 143, 149 (Ala. 1999) (finding testimony of a peer review committee chairman privileged).

7

Hosp. Sys., 439 S.E.2d 257, 259-60 (S.C. 1993) ("The underlying purpose behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussions among participants in the peer review process.").

In this case, however, Bourge interpreted the state law privilege as extending beyond the litigation context and requiring UAB to not disclose to USC's credentialing committee the information the UAB peer review committee had gathered during its investigation of Liu. Without deciding whether the Alabama legislature intended for the peer review privilege to be applied in this manner, we conclude that the peer review privilege as applied did not thwart Congress's intent in enacting the HCQIA and this application of the privilege is therefore not unconstitutional under the Supremacy Clause. Nothing in the HCQIA mandates that health care entities provide peer review information to credentialing authorities in other states in excess of the information required to be reported to the NPDB. Indeed, as stated above, Congress enacted the HCQIA "to facilitate the frank exchange of information among professionals conducting peer review inquiries" and to ensure that some minimal amount of information regarding a physician's "previous damaging or incompetent performance" will follow the physician when he or she moves from state to state. Bourge's invocation of the Alabama peer

review privilege to refuse to provide specific requested details regarding the surrender of Liu's clinical privileges does not conflict with either of these goals of the HCQIA. As such, the Alabama statutes at issue, as applied in this case, do not violate the Supremacy Clause.[6]

Liu also argues on appeal that Bourge's refusal to provide the peer review material and sending of the "recommendation" letter to USC effectively blacklisted him and prevented him from pursuing his chosen profession as a professor of medicine.[7] Accordingly, because the right to follow a profession free from unreasonable government interference is a protected property right, Liu asserts that he has presented sufficient evidence supporting his substantive due process claim. Again, we disagree.

The Supreme Court has recognized that the liberty component of the Fourteenth Amendment's Due Process Clause includes the right to pursue a profession. See Conn v. Gabbert, 526 U.S. 286, 291-92 (1999) (stating that there is "some generalized due process right to choose one's field of private employment"). In recognizing a violation of this right, however, the Court has

---

[6] This is not to say Liu is without legal recourse if Bourge in fact wrongfully invoked the privilege to deny Liu's request for his peer review information; we only conclude that Liu has identified no Supremacy Clause violation.

[7] The parties dispute whether Liu's "chosen profession" is as a cardiologist or as a professor of medicine. We reach the same conclusion regardless; therefore, we need not decide this issue.

9

noted that its cases "all deal with a complete prohibition of the right to engage in a calling, and not [a] sort of brief interruption." Id. at 292 (emphasis added). In Board of Regents v. Roth, 408 U.S. 564, 573 (1972), for example, the Supreme Court found that an employee's due process rights are triggered where the state employer imposes "a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities." (Emphasis added). In Clemons v. Dougherty County, Georgia, 684 F.2d 1365, 1371 (11th Cir. 1982), this court reiterated the standard for proving a deprivation of the liberty interest, stating that a plaintiff must establish that the state employer made "stigmatizing charges which foreclose his freedom to take advantage of other employment opportunities." See also Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1187 (11th Cir. 1985) (finding that published comments regarding public employee's non-renewal did not implicate a liberty interest because they did not "foreclose [her] freedom to take advantage of other employment opportunities"); Pirolo v. City of Clearwater, 711 F.2d 1006, 1011 (11th Cir. 1983) (dismissing airport operator's substantive due process claim where ordinances did not prevent him from continuing his profession "either at another location or under the restrictions imposed"). As such, to survive summary judgment, a claimant must present evidence suggesting that a governmental act effectively banned him or her from a profession. See Clemons,

10

684 F.2d at 1374; see also Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 531 (7th Cir. 2000) ("It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field."); Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 996-98 (9th Cir. 2007) (limiting a substantive due process occupational liberty claim "to extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure"); see also Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997) (same).

In this case, it is undisputed that Liu has received staff privileges and is currently practicing medicine with at least one hospital in California, despite the allegedly stigmatizing conduct of his former public employer. Furthermore, although he was denied a professorship at USC, Liu has presented no evidence that he would be unable to secure a similar position with any other employer. As such, Liu has simply failed to show that a state agent's conduct entirely foreclosed his freedom to pursue employment in his chosen field as either a cardiologist or a

11

professor of medicine.  Accordingly, we conclude that the district court properly granted summary judgment on Liu's substantive due process claim.

## IV.

For the reasons stated herein, we AFFIRM the judgment of the district court.