Sergio J. MASVIDAL, Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

Case No.: 09–61485–CIV.

United States District Court, S.D. Florida.

April 2, 2010.

Bryan Thomas West, Joseph A. DeMaria, Tew Cardenas LLP, Miami, FL, Robert Elliot Weisberg, Robert E. Weisberg, Coral Gables, FL, for Plaintiff.

David M. Glass, U. S. Department of Justice, Washington, DC, for Defendant.

### ORDER DENYING DEPARTMENT OF JUSTICE'S MOTION TO DISMISS

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant U.S. Department of Justice's Motion to Dismiss [DE–19], filed herein on January 11, 2010. The Court has carefully considered the Motion, Plaintiff's Response [DE–22], Defendant's Reply [DE–32], and is otherwise fully advised in the premises.

### I. BACKGROUND

The instant action stems from Plaintiff Sergio J. Masvidal's ("Masvidal") former employment with Defendant American Express Company ("AmEx"). AmEx is a financial services and travel company that provides banking, charge and credit card products, and travel-related financial services worldwide. Masvidal was employed by American Express Bank International ("AEBI"), an international banking institution and subsidiary of American Express Bank, Ltd. ("AEBL"), from 1994 through at least mid–2005. AEBI had previously been the subject of a federal investigation arising out of violations of the Anti–Money Laundering ("AML") compliance procedures imposed by the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.* In 1994, AEBI entered into a settlement agreement with the United States Department of Justice ("DOJ") following a Cease and Desist Order and Civil Penalty issued by the Federal Reserve against AEBI in November of 1993 for compliance violations. The accounts that were the subject of the investigation were referred to as the "Green Mountain" accounts. Masvidal alleges that he was appointed President and Chief Executive Officer of AEBI to "clean up the office of AEBI that had handled the 'Green Mountain' accounts and to improve AEBI's BSA/AML compliance procedures." [DE–1, ¶ 20].

By the end of 1999, Masvidal alleges that his success in implementing the BSA/AML compliance procedures at AEBI resulted in the Federal Reserve removing the Cease and Desist Order. In 2000, Masvidal was promoted to the position of Managing Director at AEBL and the head of Private Banking worldwide. By mid–2005, Masvidal was also appointed as Vice Chairman of AEBL, while continuing to serve as Chairman of AEBI. Nonetheless, Masvidal alleges that he and others regularly complained about compliance problems at the organization. In 2004, the Asset Forfeiture & Money Laundering

Section of the Criminal Division of the DOJ began an undercover DEA investigation which included the investigation of accounts at two Florida banks—one of which was AEBI. Thereafter, in 2006, the DOJ, through federal prosecutor John W. Sellers ("Sellers"), targeted AEBI for investigation of violations of BSA/AML compliance procedures. In April 2006, AEBI and the DOJ entered into a Deferred Prosecution Agreement ("DPA"). After Sellers completed the criminal investigation of AEBI with the filing of the DPA, he notified AmEx that its banking operations were under criminal investigation.

In early 2007, Masvidal alleges that he was removed as Vice Chairman of AEBI. Thereafter, on or about March 5, 2007, Masvidal further alleges that he was removed as the head of the Private Bank's Global Wealth Management Group and learned that there were reports from subordinates that he was "anti-compliance." Masvidal alleges that in response, he informed the Chairman of AEBL that he would leave the organization. On May 22, 2007, Masvidal entered into two confidential agreements with AmEx. The first agreement, hereinafter referred to as the "Stay Bonus Agreement," provided Masvidal with an "incentive payment" or "stay bonus" for Masvidal to remain in his current position until the sale of AEBL was completed. In the second agreement, hereinafter referred to as the "Severance Agreement," Masvidal agreed that during the "Restricted Period," as that term is defined by the Severance Agreement, that he would not provide any advice or act as a consultant for any competitor.

On August 3, 2007, AmEx and the DOJ entered into a DPA, and criminal charges were filed on August 6, 2007 (Case No. 07–20602–CR–ZLOCH). Also on August 3, 2007, AEBI entered into a Cease and Desist Order and Order of Assessment of Civil Money Penalty with the Federal Reserve; AEBI and American Express Travel Related Services Company, Inc. ("TRS") entered into an Assessment of Civil Money Penalty with FinCEn; and AEBL entered into a consent agreement with its regulator, the New York State Banking Department. Masvidal alleges that it was clear pursuant to the DPA and the Cease and Desist Order that any employee who was found not to have fulfilled his BSA/AML compliance obligations would not be part of AEBI going forward.

Masvidal alleges that as a condition of the global settlement with AEBI, on August 2, 2007, Sellers and AEBI entered into a secret letter agreement ("Letter Agreement") whereby Masvidal and Simon Amich (another high-ranking AmEx employee) were not permitted by the DOJ to remain in their positions at AEBI or with any successor, without the approval of the DOJ. Masvidal alleges that he subsequently learned of the Letter Agreement and that the Letter Agreement caused his termination and imposed a stigma which has prevented him from obtaining other job opportunities in the banking industry or with Standard Chartered who purchased AEBL on February 29, 2008. On or about December 13, 2007, the DOJ issued a letter stating that the DOJ voided and withdrew from the Letter Agreement and its terms no longer had any force or effect with respect to the DPA or with respect to banking financial institutions regulated by the United States. However, Masvidal alleges that this did not remove the stigma caused by the Letter Agreement. As such, on or about December 18, 2007, and through the spring of 2008, Masvidal's attorneys unsuccessfully attempted to persuade the DOJ to issue a name-clearing letter for Masvidal. Masvidal also alleges that his continued attempts to obtain equivalent banking industry employment have been unsuccessful.

Thereafter, on September 18, 2009, Masvidal filed the instant action against AmEx and the DOJ asserting four counts. Only count I relates to the DOJ. In count I, Masvidal seeks a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201–2201 and Rule 57, Fed.R.Civ.P., and injunctive relief. Masvidal alleges that the facts of the Complaint establish a dismissal of Masvidal that was caused by the DOJ and which imposed a stigma on Masvidal, foreclosing his freedom to take advantage of other employment opportunities. Masvidal further alleges that the DOJ's actions were in violation of the Fifth Amendment and can only be remedied by a name-clearing hearing. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as to the Constitutional claim brought against the DOJ and diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1332 and 1367 as to the claims against AmEx. On January 11, 2010, the DOJ filed the instant motion to dismiss.

## II. *DISCUSSION*

The DOJ moves to dismiss Masvidal's Complaint on the following grounds: (1) that Masvidal is not entitled to any relief because his claim of denial of due process is precluded by the absolute privilege that protects statements of attorneys relating to plea agreements; (2) no denial of due process took place here because the Letter Agreement did not contain any defamatory information; (3) Masvidal has failed to allege that the DOJ published the Letter Agreement; (4) failure to allege with sufficient particularity that the Letter Agreement deprived him of a tangible interest; and (5) there was no denial of due process because Masvidal received all the process due him.

### A. Motion to Dismiss Standard

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley,* 355 U.S. at 41, 78 S.Ct. 99). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)).

However, this is inapplicable if the allegations are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements ...". *Iqbal,* 129 S.Ct. at 1949. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550 U.S. at 568 n. 8, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis*

*v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

## B. The DOJ's Motion to Dismiss [1]

The DOJ argues that "injury to reputation, by itself," does not constitute the deprivation of a liberty or property interest protected by the Fifth or Fourteenth Amendment. *Behrens v. Regier,* 422 F.3d 1255, 1259 (11th Cir.2005). Instead, a plaintiff must satisfy "what has come to be known as the stigma-plus test" where an alleged denial of due process is based upon an injury to reputation. *Id.* Under this test, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Id.* (internal citations omitted).

The DOJ asserts that the "stigma-plus" test requires at a minimum an act of common law defamation and for that reason the principles of common law defamation apply to the due process claims. As such, the DOJ contends that the "common law privileges carry over into [the] due process analysis as it is the government's involvement ... that 'transforms a [common law] defamation into a [constitutional] deprivation of liberty.'" *Siegert v. Gilley,* 895 F.2d 797, 803 (D.C.Cir.1990) (internal cita-

tions omitted). The DOJ argues that Masvidal's claim of denial of due process is precluded by the absolute privilege described in § 586 of Restatement (Second) of Torts (1977) which provides that an "attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *See also, McLean v. Int'l Harvester Co.,* 817 F.2d 1214, 1220 (5th Cir.1987) (holding the false light claim based upon communications made in a judicial proceeding were absolutely privileged and immune from an action). Because the Letter Agreement was executed as part of the global settlement of the DPA and because the absolute privilege against claims of defamation attaches to the contents of the Letter Agreement, the DOJ argues that the due process claim based upon those contents is precluded.

However, the Court is not persuaded that the DOJ is entitled to dismissal on this ground. First, the Court is not persuaded that the DOJ has demonstrated that Masvidal's due process claim should be analyzed under the "stigma-plus" test rather than ordinary due process claim principles. The DOJ points to *Behrens,* 422 F.3d at 1259, where the Eleventh Cir-

---

1. The DOJ attaches 76 pages of materials in support of its Motion to Dismiss. The DOJ contends that the Court may consider the materials as they are central to the Complaint and are not in dispute or, alternatively, the Motion may be treated as one for summary judgment. The Court declines to convert the Motion into one for summary judgment, but recognizes that it may properly consider documents in ruling on a motion to dismiss that are referred to in the Complaint and are central to the claims. *See Brooks v. Blue Cross and Blue Shield of Fla.,* 116 F.3d 1364, 1369 (11th Cir.1997) (holding that "where the

plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into one for summary judgment."). Regardless, the Court declines to consider the attached documents as the Court can rule on the Motion to Dismiss based solely on the pleadings and the arguments presented by the parties.

cuit analyzed the plaintiffs' due process claim under the stigma-plus test; however, in *Behrens* the plaintiffs' claim was premised on injury to reputation. On the contrary here, Masvidal has alleged more than a mere reputational injury claim. Masvidal alleges that the DOJ's conduct resulted in his termination from employment and further imposed a stigma that prevented him from securing other employment opportunities. The Supreme Court has recognized that a plaintiff can have a property right in continued employment that may be protected by the Fifth Amendment Due Process clause. *See FDIC v. Mallen*, 486 U.S. 230, 240, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) ("It is undisputed that appellee's interest in the right to continue to serve as president of the bank and to participate in the conduct of its affairs is a property right protected by the Fifth Amendment Due Process Clause."). As such, the Court is persuaded that Masvidal's claim is not based upon reputational injury alone thereby invoking the stigma-plus test, but instead that Masvidal has alleged a due process claim based upon the purported deprivation of a recognized right.

■ When considering the allegations of the Complaint and the arguments raised by Masvidal, the Court is persuaded that Masvidal has in fact adequately alleged his due process claim to survive a motion to dismiss. Masvidal has alleged the deprivation of a constitutionally-protected interest. As discussed above, the Supreme Court has made clear that a plaintiff can have a constitutionally protected interest in his professional practice. *See Mallen*, 486 U.S. at 240, 108 S.Ct. 1780 ("It is undisputed that appellee's interest in the right to continue to serve as president of the bank and to participate in the conduct

of its affairs is a property right protected by the Fifth Amendment Due Process Clause."); *see also Ming Wei Liu v. Bd. of Tr.*, 330 Fed.Appx. 775, 780 (11th Cir.2009) (recognizing a liberty interest can include the right to pursue a profession). Masvidal alleges that the DOJ forced him out of the banking industry through the Letter Agreement just as the plaintiff in *Mallen* was removed by an order from the FDIC. Further, Masvidal alleges that he has also suffered a continuing "stigma" as a result of the Letter Agreement that has prevented him from finding gainful employment in his industry. While the Court agrees that injury to reputation alone is insufficient to invoke the procedural protection of the Due Process Clause, *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), when considering that Masvidal has alleged that his reputation was damaged in conjunction with the DOJ's interference with his private employment the Court is persuaded that Masvidal has adequately alleged a constitutionally-protected interest. *See also, U.S. v. Briggs*, 514 F.2d 794, 797 (5th Cir.1975) (recognizing that "injury to [ ] good names and reputations and impairment of [ ] ability to obtain employment" were "substantial and legally cognizable interests entitled to constitutional protection against official governmental action."); *In re Smith*, 656 F.2d 1101 (5th Cir.1981) (concluding that the "inclusion of [the petitioner's] name in the factual resumes were a violation of his liberty and property rights guaranteed by the Constitution.").

The DOJ counters that Masvidal fails to allege that he was deprived of a tangible interest since Masvidal has not made a showing that the DOJ's actions "effectively banned him [ ] from a profession" due to the non-compete in the Severance Agreement, lack of allegations that Standard

Chartered did not provide a position due to the Letter Agreement, and lack of allegations relating to failed efforts to obtain employment. *Ming Wei Liu*, 330 Fed. Appx. at 780. The Court does not agree. Masvidal alleges that "Standard Chartered's unwillingness to have [Masvidal] join the acquiring bank was a direct result of his being relieved of his duties and selected by the Government for exclusion from banking." [DE–1, ¶ 71]. Further, Masvidal has alleged his failed efforts to obtain any employment in his chosen field. When viewing these allegations in the light most favorable to Masvidal, the Court concludes that Masvidal has adequately alleged that he was deprived of a constitutionally protected interest.

■ In addition, the Court concludes that Masvidal has adequately alleged that he was deprived of constitutionally adequate process as he alleges that he received no notice, no hearing, no chance to respond at all before he lost his job, reputation and prospects in the banking industry as a direct consequence of the Letter Agreement. While the DOJ argues that Masvidal received all the process due him because the Letter Agreement was subsequently withdrawn and, thus, has no legal effect, this argument is without merit. To support this proposition, the DOJ cites to *U.S. v. Sigma Int'l*, 300 F.3d 1278 (11th Cir.2002), where the Eleventh Circuit denied the plaintiff's request for a name-clearing hearing when the court opinions that criticized the plaintiff were vacated and officially gone. However, in reaching this conclusion, the *Sigma* court noted that the plaintiff failed to allege "that he has suffered any loss of employment, any diminution of salary, or anything else that would in our view qualify as 'some more tangible interest[ ],'" that would entitle him to the requested relief. *Id.* at 1280. On the contrary here, Masvidal has alleged a loss of employment and obstruction from obtaining future employment as a result of the Letter Agreement despite its being withdrawn. Again, when viewing these allegations in the light most favorable to Masvidal, Masvidal has adequately alleged a denial of adequate process. Thus, having found that Masvidal alleges he was deprived of a constitutionally protected interest and denied adequate process, the Court concludes that Masvidal has adequately alleged his claim for due process.

■ Finally, in regard to the DOJ's contention that the due process claim is barred by an absolute privilege, it is worth noting that the DOJ has failed to present any clear and controlling caselaw where an absolute privilege was applied to bar a due process claim, rather than a common law claim, under similar facts. Indeed, Masvidal argues that there is no authority for the DOJ's argument and instead points to *Briggs*, 514 F.2d at 794 and *In re Smith*, 656 F.2d at 1101, where due process claims based upon slanderous in-court statements were permitted with no suggestion that the conduct could be shielded by a "defamation privilege."

Masvidal also points to *Duck v. Jacobs*, 739 F.Supp. 1545, 1552 & n. 4 (S.D.Ga. 1990), a case cited by the DOJ, which rejects the relevance of common-law privileges to Masvidal's due process claim. The *Duck* court explained that "[w]here, as here, the plaintiff brings a claim for violation of his rights under the federal Constitution, any question of privilege or immunity is governed by federal law," and the "only situation in which federal law recognizes an absolute privilege is where the defendant acts as a judicial officer in violating the plaintiff's constitutional rights."

*Id.* at 1552. The DOJ has not asserted the only recognized federal privilege—that is, that the defendant was acting as a judicial officer in violating Masvidal's constitutional rights—and, therefore, the Court is not persuaded that the DOJ has shown its entitlement to dismissal of the due process claim on this ground.[2]

While the DOJ argues that the cases of *Xiques v. Knight,* 25 Fed.Appx. 251, 253 (6th Cir.2001) and *Duck,* 739 F.Supp. at 1552 & n. 4, both support the proposition that due process claims under the stigma-plus test may be precluded by common law privileges, the Court does not agree. First, as discussed above, the Court is not persuaded that the stigma-plus test applies to the instant facts. Second, neither case supports the proposition that a due process claim premised upon the government's conduct in placing conditions and limitations on the plaintiff's future employment is barred by a defamation privilege as is the case here. Indeed, in *Duck,* as discussed above, the court recognized that federal law only recognizes one absolute privilege that has not been asserted by the DOJ here. Additionally, unlike the plaintiff in *Xiques* who's claim was based on

purportedly defamatory statements, here Masvidal's claim is based upon the purported dismissal caused by the DOJ and the resulting stigma that attached. As such, the Court concludes that the DOJ has not shown its entitlement to dismissal of the due process claim on the ground of privilege.[3]

### III. *CONCLUSION*

Accordingly, it is **ORDERED AND AD-JUDGED** that Defendant U.S. Department of Justice's Motion to Dismiss [DE-19] is hereby **DENIED**. Defendant U.S. Department of Justice shall file an answer to the Complaint within twenty (20) days of the date of this Order.

---

**2.** Masvidal also argues that even assuming the due process claim is subject to common law tort privileges, that the privilege does not apply as the Letter Agreement was outside of the judicial proceedings and purposely kept secret from the presiding judge. *See Fridovich v. Fridovich,* 598 So.2d 65, 66 (Fla.1992) (holding that only "statements made in the course of judicial proceedings are absolutely privileged"). While rejecting the DOJ's argument on other grounds, the Court notes that it previously rejected a similar argument by Masvidal [DE-36], holding that the settlement negotiations embodied in the Letter Agreement were an integral part of the judicial process.

**3.** The DOJ's remaining arguments are premised on the unsupported assumption that Mas-

vidal's due process claim should either be analyzed under the stigma-plus test or that the claim is really one for defamation. However, the Court finds this assumption to be without merit. Masvidal has alleged more than mere reputational injury and more than simple defamation as his claim is based upon the DOJ's conduct in placing conditions and limitations on Masvidal's future employment. Thus, having concluded that Masvidal has adequately alleged his due process claim and that his claim is not a recast defamation claim or subject to the stigma-plus test, the Court need not reach the DOJ's alternative arguments that Masvidal failed to allege the Letter Agreement contained defamatory information and failed to allege that the DOJ published the Letter Agreement.